**MARKHAM, Appellant,**

v.

**EARLE M. JORGENSEN COMPANY, a.k.a. EMJ, Appellee.**

[Cite as *Markham v. Earle M. Jorgensen Co.* (2000), 138 Ohio App.3d 484.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76350.

Decided Aug. 28, 2000.

486

*Michael Terrence Conway & Associates Co., L.P.A.,* and *Michael Terrence Conway,* for appellant.

*Joondeph, Shaffer & Bittel, L.L.P., Timothy M. Bittel, Thomas P. Kelly* and *Kevin T. Lyden,* for appellee.

---

MICHAEL J. CORRIGAN, Judge.

Plaintiff-appellant herein, Brian Markham, appeals from the entry of summary judgment by the trial court in favor of the defendant-appellee, Earle M. Jorgensen Co., a.k.a. EMJ, on appellant's claims for unlawful retaliatory discharge under R.C. 4123.90 and illegal handicap discrimination under R.C. 4112.02. Because we find that the uncontroverted evidence before the trial court demonstrated that the appellant was terminated for reasons not relating to his application for workers' compensation benefits and because the appellant's handicap discrimination case was deficient as a matter of law, we affirm the trial court's grant of summary judgment in favor of the appellee.

The appellant began work at the appellee's operations sometime in or about March 1994 as a warehouseman. During his tenure working at the appellee's plant, the appellant's job title was reclassified from warehouseman to welder and then to saw/machine operator. Each change in job classification constituted a promotion with a corresponding raise in pay.

According to the appellant's own deposition testimony, he had filed "a couple" of workers' compensation claims prior to the claim for which he now alleges caused his unlawful retaliatory termination. On or about June 26, 1997, the appellant injured his shoulder when he attempted to pick up one end of an eighteen-foot-long, one-hundred-eighty-pound bar. The injury was diagnosed as a shoulder strain. The appellant promptly applied for workers' compensation benefits as a result of this injury.

The appellant was issued a "patient work update" by his treating physician on July 30, 1997, which stated that as of that date the appellant was cleared to return to work but was to refrain from lifting with his right arm until his next visit—or August 20, 1997. Pursuant to a light-duty work program adopted by the appellee in April 1997, with the consent of the union that represented appellant, the appellant was offered light-duty work assignments consistent with the limitations issued by his doctor during the period of rehabilitation.[1]

The appellant did return to work after being cleared by his treating physician but consistently either refused to perform the light duty requested or would leave

---

1. The terms and conditions of the employment relationship between the parties in this case were governed by the collective bargaining agreement entered into between appellee and United Steelworkers Local 6037–2.

work early after complaining that the activity aggravated his shoulder condition.[2] The appellant also failed to return to work after his physical therapy appointments on different occasions because he felt that he was in too much pain from his therapy treatments to perform even the light-duty work assignments requested of him. The light-duty assignments initially proposed by the appellee included filing papers in an office, light maintenance in the warehouse, and painting and spackling the outside front of the building. The appellant stated in writing in response to the proposal that he would agree to perform only the filing duties but would "advise" as to whether he could perform the other duties "after consulting [his] doctor."

On September 12, 1997, the appellant's supervisor requested that he pick up debris from the company parking lot, as the appellant was still not medically cleared to return to his position as a machine operator. After twenty-five minutes of picking up litter, the appellant told his supervisor that his right arm was hurting him and that he was going home and that if anyone had any questions concerning his early departure, they could contact his lawyer. The appellant stated in his deposition that he left early on at least two other occasions after being asked to clean up debris in the parking lot. In his appellate brief filed with this court, the appellant states that he was "insulted and humiliated" by the request that he pick up trash in the parking lot, as well as by his other light-duty assignments. There was no evidence that the appellant ever expressed these sentiments towards light-duty assignments to the appellee.

After the appellant had been on light-duty assignments for a period of approximately four to six weeks, the appellee arranged for the appellant to have a "helper" to assist him in performing his duties as a machine operator. The helper was necessitated by the fact the appellant claimed that he still had limited use of his right arm. During the period that the appellant returned to his job as a machine operator with the assistance of a helper, he continued to complain of pain in his arm and continued to be routinely unable to work an entire shift without leaving early.

At all times relevant from the date of the appellant's injury until the date of his termination, the appellant was paid at the hourly rate paid to full-time machine operators. There was never a time during the period in which the appellant was off work or while he was on light duty that his pay was decreased to reflect his diminished job responsibilities.

---

2. Although the appellant consistently refused to perform even light-duty assignments during the period following his injury and repeatedly left work early, he nonetheless complained in his deposition that, although he was paid at his machine operator rate during this entire period (and even received a raise during the same period pursuant to a collective bargaining agreement), he was unfairly refused overtime because he was on light duty.

After the appellant had repeatedly either refused light duty assignments or had left work early despite only being requested to do limited work with his one good arm, the appellee retained the services of a private investigator to determine if the appellant was working at another job during the hours he was supposed to be at appellee's plant.[3] The investigation of the appellant revealed that he had a fairly lengthy criminal record that he had failed to disclose on his job application. Specifically, the appellant had felony convictions from 1988 in two separate cases for forgery, uttering, theft, receiving stolen property, and passing bad checks, and from 1989 for felonious assault and aggravated assault arising out of a single indictment. The appellant served a six-month jail sentence on his convictions for felonious assault and aggravated assault, which he also failed to disclose on his job application.

When the appellee's plant manager confronted the appellant with results of the investigation, the appellant once again lied and denied that he had any criminal record or that he had ever served a prison sentence. It was only when he was confronted with the actual physical documentation of his criminal record that the appellant finally admitted to his past. Based upon the fact that the appellant had a lengthy record of criminal activity involving dishonest behavior, that he had failed to disclose his record on his job application despite the fact that he was clearly obligated to do so, and that he had continued to deny that he had a criminal record when he was questioned point blank on the subject by the plant manager, the appellee immediately issued the appellant a five-day suspension without pay pending discharge. The appellant was thereafter formally terminated on October 24, 1997. During the entire conversation in which the appellant was questioned by the plant manager subsequent to which he received the five-day suspension that led to his discharge, the appellant was accompanied by a union representative. Both appellant and the union representative signed the written notice of suspension.

Appellant initially filed suit against appellee on January 23, 1998, alleging illegal retaliatory discharge under R.C. 4123.90. The appellant admittedly failed to provide appellee written notice of his intent to bring suit prior to initially filing his complaint. R.C. 4123.90 provides that a lawsuit alleging retaliatory discharge shall be brought within one-hundred-eighty days of the adverse employment action in question, but that "no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph within ninety days immediately following the discharge, demotion, reassignment

---

**3.** Although the private investigator did not document that the appellant was working a second job during the hours he was supposed to be at appellee's plant, the appellant later admitted in his deposition that he was employed part-time as a maintenance man at the apartment building where he lived during the relevant time period.

or punitive action taken."[4] The appellant dismissed the initial lawsuit, pursuant to Civ.R. 41(A), and then refiled the action on March 23, 1998.

On April 28, 1998, the appellee filed "Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction," wherein it was once again alleged that the appellant failed to provide written notice of the claimed violation of R.C. 4123.90 within ninety days of his termination. On July 8, 1998, the trial court denied the motion to dismiss. On July 8, 1998, the trial court granted the appellant leave to amend his complaint so as to include a cause of action for illegal handicap discrimination, pursuant to R.C. 4112.02, or, in the alternative, R.C. 4112.99.

Thereafter, on January 19, 1999, the appellee filed a motion for summary judgment in which it was alleged that even where the disputed facts were construed most strongly in favor of the appellant, the appellee was entitled to summary judgment because reasonable minds could only conclude that the appellant was not terminated as a retaliatory measure for filing a claim for workers' compensation benefits. The motion for summary judgment was granted by the trial court in an order journalized on March 29, 1999, which read, in its entirety, as follows:

"Motion for Summary Judgment is granted as to the first and second cause of action. Defendant's basis for termination was proper, and Plaintiff failed to provide sufficient and pretextual reason for the discharge. See *Aloi v. Ravenna Aluminum Indus.* (1997), 1997 Ohio App. Lexis 2242 [1997 WL 286130]; page 18; *Kilbarger v. Anchor Hocking Glass Co.* (1997), 120 Ohio App.3d 332, 339, 697 N.E.2d 1080, 1084–1085. FINAL."

Appellant timely filed the within appeal from the order of the trial court and presents a total of three assignments of error. The first two assignments of error, having a common basis in law and fact, will be addressed concurrently. The first two assignments of error state:

"1. The trial court erred to the prejudice of the plaintiff–appellant by dismissing his case pursuant to defendant–appellee's motion for summary judgment under the theory that the plaintiff–appellant did not provide sufficient opposition evidence that the defendant-appellee's reason for terminating the appellant's employment was pretextual.

---

4. Although the appellee devotes a large part of its brief submitted to this court to the issue of whether the trial court should have granted appellee's motion to dismiss for failure to comply with the ninety-day requirement of R.C. 4123.90, there was no cross-assignment of error presented on this point. This court declines to raise the issue of jurisdiction *sua sponte,* as it appears as if jurisdiction was proper. Additionally, because the parties dispute the date when the appellant learned that he had been permanently discharged, a finder of fact could reasonably conclude that appellee did, in fact, receive written notice of the claimed violation of R.C. 4123.90 within ninety days immediately following the discharge.

"2. The trial court erred to the prejudice of plaintiff-appellant by deciding a matter of fact, verses [*sic*] deciding whether or not there exists sufficient evidence for trial, and on review of defendant's motion for summary judgment with respect to the retaliation claim, to wit: that the reason the defendant-appellee gave for terminating the plaintiff-appellant's employment was 'proper.' "

Civ.R. 56 provides that summary judgment may be granted only after the trial court determines that (1) no genuine issues as to any material fact remain to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio State Supreme Court modified and/or clarified the summary judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under *Dresher*, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." *Id.* at 296, 662 N.E.2d at 276. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. *Id.* at 293, 662 N.E.2d at 273–274. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a genuine issue for trial exists. *Id.*

This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144

In order to establish a claim for wrongful retaliation a plaintiff must demonstrate that adverse employment action was taken against him because he attempted to exercise his rights under the Workers' Compensation Act. R.C. 4123.90.

■ An employee establishes a prima facie case for retaliatory discharge when he proves that he (1) was injured on the job, (2) filed a workers' compensation claim, and (3) was discharged in contravention of R.C. 4123.90. *Kilbarger v. Anchor Hocking Glass Co.* (1997), 120 Ohio App.3d 332, 337–338, 697 N.E.2d 1080, 1083–1084; *Wilson v. Riverside Hosp.* (1985), 18 Ohio St.3d 8, 18 OBR 6, 479 N.E.2d 275, at syllabus. While it is true that appellant was injured on the job and filed a workers' compensation claim, appellant did not produce any evidence that he was fired because he filed the claim. Thus, appellant has failed to establish a *prima facie* case for retaliatory discharge.

■ Where an employee raises an inference of a retaliatory discharge, the burden of going forward with evidence shifts to the employer to set forth a legitimate, nonretaliatory reason for the discharge. *Green v. Burton Rubber Processing, Inc.* (Dec. 11, 1998), Geauga App. No. 97–G–2102, unreported, 1998 WL 964484. If the employer sets forth a legitimate, nonretaliatory reason for the employee's discharge, the employee must establish that the reason given by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Workers' Compensation Act. *Id.* While the burden of going forward with evidence may shift between the employee and the employer in these types of cases, the employee will always retain the ultimate burden of proof in an action filed under R.C. 4123.90. *Id.*

■ Thus, the employee must set forth a prima facie case of retaliatory discharge, then the employer must set forth a legitimate nonretaliatory reason for the discharge and, finally, the employee must establish that the employer used that nonretaliatory reason as a pretext for discharging the employee for activity protected by the Workers' Compensation Act. The burden of proving that the employer had a retaliatory motive remains at all times on the employee. *Bertrand v. Collinwood Serv. Ctr.* (May 16, 1991), Cuyahoga App. No. 58508, unreported., 1991 WL 81487

When considering whether an employer has a legitimate nonretaliatory reason for discharging an employee, the court must keep in mind the fact that an employee who files a workers' compensation claim is not insulated from discharge. In *Anschutz v. Dresser Industries, Inc.* (Dec. 11, 1991), Crawford App. No. 3–90–8, unreported, 1991 WL 261828, the court quoted and followed *Brown v. Whirlpool Corp.* (Sept. 1, 1987), Marion App. No. 9–86–20, unreported, 1987 WL 16261, which states:

"R.C. 4123.90 does not prohibit a discharge for just and legitimate termination of employment. It does not suspend the rights of an employer, nor insulate an employee from an otherwise just and lawful discharge. The punitive nature of an unlawful discharge involves a well defined word and includes within its meaning recognized legal implications, which under the statute must be retaliatory in nature."

█ Thus, employees who have filed workers' compensation cases maybe discharged for just and lawful reasons. The statute protects only against termination directly precipitated by the filing of a workers' compensation claim. *Metheney v. Sajar Plastics, Inc.* (1990), 69 Ohio App.3d 428, 590 N.E.2d 1311; *Brown v. Lear Operations Corp.* (Sept. 30, 1999), Sandusky App. No. S–99–013, unreported, 1999 WL 769553. In *Metheney,* the Sixth Appellate District stated:

"It is certainly within the realm of possibility that an employer could discharge an employee under the guise of an attendance policy when the company's actual motivation is to punish the worker for filing a claim. * * * Nevertheless, it is the job of this court to apply the law as written. The scope of the cause of action created by the statute is very limited, and the burden of proof is upon the employee to specifically show that the termination was in direct response to the filing of a claim." *Metheney v. Sajar Plastics, Inc., supra,* 69 Ohio App.3d at 432, 590 N.E.2d at 1314.

█ In the instant case, the appellant would have this court adopt a policy that would prevent employers from discharging an employee who has filed a workers' compensation claim, even where adequate grounds independent of the claim for benefits exist for the dismissal. The appellant points to a few comments purportedly made by other employees who questioned the legitimacy of his injuries as evidence that he was terminated in retaliation for filing a claim for workers' compensation benefits. The mere fact that other employees might have noticed that the appellant refused to perform light-duty assignments consistent with the restrictions issued by the appellant's physician, and that they might have noticed that he was constantly going home early, is not sufficient for the appellant to meet his burden of making a *prima facie* showing of retaliatory discharge. Rather, the appellant must demonstrate that he was terminated *because* he filed the workers' compensation claim.

At his deposition, the appellant admitted that the appellee did not require him to work until after such time as he was cleared for limited duty. The appellant further conceded that the appellee offered him a number of light-duty assignments to choose from and that he was provided with a full-time helper once he returned to his position as a machine operator. There has never been a claim made that the appellant was ever paid anything less than his full machine

operator salary, per the terms of the collective bargaining agreement, during his entire convalescence period. The uncontroverted evidence presented to the trial court demonstrated that the appellee found it necessary to investigate the appellant's whereabouts when he was supposed to be at work only after the appellant repeatedly failed to work an entire shift despite the fact that he was assigned light duty and given an assistant to help him with his job. As the appellant later admitted in his deposition, he was, in fact, working at least part-time as a custodian during the period where he claimed that he could not even file paperwork without aggravating his injured arm.

■ This court declines to interpret R.C. 4123.90 in such a fashion as to prohibit an employer from investigating suspicious behavior of an employee merely because a claim for workers' compensation benefits has been filed. As stated by the court in *Brown v. Whirlpool Corp.*, *supra*, R.C. 4123.90 does not operate to suspend the rights of an employer nor does it insulate an employee from otherwise lawful actions taken by the employer. To hold otherwise would render employers virtually powerless to combat fraud and/or blatant inefficaciousness on the part of any employee who happened to have a pending workers' compensation claim.

■ The fact that the investigation of the appellant turned up a very substantial undisclosed criminal history and that the appellant lied about the his past once again when specifically questioned by his supervisor, provided a legitimate reason for the appellee to terminate the appellant's employment. R.C. 4123.90 does not obligate the appellee to keep a patently dishonest person in its employ simply because a claim for workers' compensation benefits happened to be pending at the time that the facts underlying the termination were discovered.

Because the appellant has failed to establish a *prima facie* case for workers' compensation retaliatory discharge, and because the appellee has set forth a legitimate, nonretaliatory reason for the adverse employment action taken against the appellant, the trial court correctly granted appellee's motion for summary judgment. Appellant did not fulfill his obligation to present evidence controverting that which was proffered by appellee. Consequently, there is no genuine issue of material fact and reasonable minds could only conclude that appellant was terminated for good business reasons and not in retaliation for filing his workers' compensation claim. The appellant's first two assignments of error are overruled.

The appellant's third assignment of error states:

"3. The trial court erred to the prejudice of plaintiff–appellant by deciding a matter of fact, verses [*sic*] whether or not there exists sufficient evidence for trial, and on review of defendant's motion for summary judgment with respect to

the claim for handicap discrimination, to wit, that the reason the defendant-appellee gave for terminating the plaintiff-appellant's employment was 'proper.' "

The appellant's attempt to bring a claim for handicap discrimination arising out of injury consisting of a strain of his right arm is clearly a stretch. It is unlikely that the appellant was ever perceived as handicapped by his employer, his co-workers or even by himself. R.C. 4112.01(A)(13) defines "handicap" as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, seeing, hearing, speaking, breathing, learning and working; a record of physical impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13). The definition of "handicap" contained in R.C. 4112.01(A)(13) is limited to individuals who cannot perform "everyday routine living and working without significantly increased hardship and vulnerability to what are considered the everyday obstacles and hazards encountered by the nonhandicapped." *Columbus v. Ohio Civ. Rights Comm.* (1985), 23 Ohio App.3d 178, 181, 23 OBR 421, 424–425, 492 N.E.2d 482, 485–486.

Pursuant to R.C. 4112.02, handicap discrimination in employment is generally prohibited. That section states that it shall be an unlawful discriminatory practice:

"(A) For any employer, because of the * * * handicap * * * of any person, to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." (Emphasis added.)

In order to reach the merits of appellant's argument, we will examine whether the evidence supports a finding that he was discriminated against due to his "handicap."

■ In order to prove handicap discrimination under R.C. 4112.02(A), appellant must first assert a *prima facie* case of discrimination or direct evidence of discrimination. At that point, a presumption of discrimination exists which appellee may then rebut by presenting a legitimate nondiscriminatory reason for appellant's discharge. If appellee establishes a valid reason, the presumption is rebutted and may be overcome only by proof that the proffered reason for termination was a pretext for discrimination. *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272.

■ Since appellant failed to present direct evidence of discrimination, he must assert a prima facie case. To do so, he must show that (1) he is handicapped, (2) he was discharged in part because of the handicap, and (3) even though he is handicapped, he can safely and substantially perform the essential functions of the job with reasonable accommodations. *Hazlett v. Martin Chevro-*

*let, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478. The appellant in the instant case failed to establish any of these elements.

In deciding the first two assignments of error, this court has already concluded that the appellant was, in fact, terminated for just cause. Therefore, appellant is precluded from recovery under R.C. 4112.02. Furthermore, even if we were to find that the appellant was "handicapped" under the criteria of R.C. 4112.01(A)(13) (which we expressly decline to do), his claim would still fail because he is unable to meet the other two prongs of the *Hazlett* standard to establish discrimination. There was no evidence presented to the trial court that tended to indicate that the appellant was ever perceived as handicapped or that he was discharged in part because of the perceived handicap.

Though R.C. 4112.01(A)(13) expressly includes "work" as a major life activity, we must construe the term within the context of the statute as covering the most basic and fundamental of physical tasks in general, not specific jobs with specific employers. The record does not support a finding that the cumulative effect of the appellant's strained right arm could lead a reasonable person to conclude that the degree of appellant's impairment was of such nature and severity, or of such duration or expected duration, or of such permanent or long-term impact as to render him substantially limited in performing routine labor duties. See *Kemo v. St. Clairsville* (1998), 128 Ohio App.3d 178, 186, 714 N.E.2d 412, 417–418. Appellant's burden is to establish that appellee regarded him as substantially limited in his ability to perform such fundamental and routine tasks as are necessary to exist in everyday life, not merely to establish that appellant regarded him as limited in his abilities to perform the specific tasks associated with a specific job. *Id.*

This court concludes that the appellant did not have a physical impairment that substantially limited a major life activity. At most, appellant's strained right arm was a "transitory injury, which caused him pain and inconvenience for a definite period of time, but which had no adverse residual effects." *Maloney v. Barberton Citizens Hosp.* (1996), 109 Ohio App.3d 372, 376, 672 N.E.2d 223, 225. Such an injury does not constitute a handicap under R.C. 4112.01(A)(13). *Id.*

Additionally, the appellant failed to show that despite his alleged handicap he could safely and substantially perform the essential functions of the job with reasonable accommodations. Even after the appellee provided the appellant with a full-time helper (which is more than required under the "reasonable accommodations" language in *Hazlett*), the appellant admits that he was still unable to consistently work a full shift without having to stop work because of the pain in his arm.

As the appellant is unable to establish a prima facie case of handicap discrimination, the trial court correctly granted summary judgment on this claim. The third assignment of error is overruled.

*Judgment affirmed.*

DYKE, A.J., concurs.

KILBANE, J., concurs in judgment only.

KILBANE, J., concurring in judgment with separate opinion.

On this appeal from an order of Judge Lillian J. Greene, I concur in the judgment because I cannot agree with the conclusion drawn by the majority. R.C. 4123.90 prohibits an employer from discharging, demoting, reassigning, or taking any punitive action against an employee "because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer." An employee who seeks to establish a claim for retaliatory discharge under R.C. 4123.90 states his prima facie case when the complaint "alleges that the employee [(1)] was injured on the job, [(2)] filed a claim for workers' compensation, and [(3)] was discharged by that employer in contravention of R.C. 123.90." *Wilson v. Riverside Hosp.* (1985), 18 Ohio St.3d 8, 18 OBR 6, 479 N.E.2d 275, syllabus; *Kilbarger v. Anchor Hocking Glass Co.* (1997), 120 Ohio App.3d 332, 337–338, 697 N.E.2d 1080, 1083–1084.

The majority concludes that, "[w]hile it is true that [Markham] was injured on the job and filed a workers' compensation claim, appellant did not produce any evidence that he was fired because he filed the claim. Thus, appellant has failed to establish a *prima facie* case for retaliatory discharge." I disagree. In order to avoid summary judgment on his prima facie case, Markham had to produce evidence, of the type listed in Civ.R. 56(C), to support his claim. As the majority's rendition of the "uncontroverted" facts indicates, Markham did satisfy this burden. Despite the fact that Markham's "patient work update" issued by his treating physician indicated that he should refrain from lifting his right arm, the "light duty" assignments EMJ offered to Markham included maintenance in the warehouse, and painting and spackling the outside front of the building—assignments that most likely would require Markham to lift his right arm. The fact that EMJ did not decrease his pay and later supplied Markham with a "helper" to perform his "light duty" tasks does not negate his claim. Rather, these facts counter Markham's assertion that EMJ engaged in punitive behavior that culminated in his dismissal. Because these facts *go to the weight of the*

evidence, EMJ did not sustain its burden to show that there was no genuine issue as to any material fact.[5]

Because Markham made out his prima facie case, the burden shifted to EMJ to show a nondiscriminatory reason for the discharge. *Kilbarger,* 120 Ohio App.3d at 338, 697 N.E.2d at 1083–1084. As the majority acknowledges, EMJ satisfied this burden when it showed that it discharged Markham for his failure to disclose information about his criminal record as requested on his employment application. Once EMJ satisfied this burden, the burden then shifted to Markham to show that this "reason" for discharge was merely pretextual. *Id.* Markham failed to make such a showing; rather, he claimed that the investigation EMJ conducted after he exhibited (what EMJ found to be) suspicious behavior violated the spirit of R.C. 4123.90. R.C. 4123.90 should not be used as a shield to protect an employee from his otherwise blatant dishonesty about his criminal record in his application for employment. For this reason, I would overrule his first and second assignments of error and affirm the judge's grant of summary judgment on Markham's R.C. 4123.90 claim.

With regard to his third assignment of error, Markham failed to establish a *prima facie* case of handicap discrimination under R.C. 4112.02(A), *i.e.,* that he was discharged without just cause because of a handicap. The majority opinion correctly sets forth the elements of the *prima facie* case:

"In order to establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Hood v. Diamond Products, Inc.* (1996), 74 Ohio St.3d 298, 658 N.E.2d 738, syllabus, following *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478; accord *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204, 205–206.

In the instant matter, Markham's failure to present evidence tending to show that EMJ's reason for discharge, *i.e.,* undisclosed criminal record, was pretexual also established that the discharge was *with good cause* for purposes of his R.C. 4112.02 claim and, thus, precluded recovery for handicap discrimination. In other words, regardless of whether he suffered a "handicap" as defined by R.C. 4112.01(A)(13), or EMJ considered him a "disabled person" as defined by Ohio

---

5. Moreover, the mere fact that Markham had filed other workers' compensation claims does not, as the majority decision insinuates, automatically confute the legitimacy of his present injury.

Adm. Code 4112–5–02(H),[6] Markham failed to satisfy the second element of his *prima facie* case showing that he was fired, at least in part, because of his "handicap." Even if Markham's handicap discrimination claim did not fail on the second element, it failed on the third element because he presented no evidence to show that he could safely and substantially perform the essential functions of *any* of the positions EMJ offered with the reasonable accommodation of a helper, nor is there anything to show that he suggested additional or other reasonable accommodations. See *Darovich v. Gen. Motors Corp.* (Feb. 24, 2000), Cuyahoga App. No. 75859, unreported, 2000 WL 217766.

As the foregoing analysis shows, an employee's failure to sustain his burden on any one of the three elements disposes of his handicap discrimination claim.

Because EMJ did not challenge below and has not challenged here Markham's allegation that he suffered from a handicap, the majority goes too far in adopting the holding of *Kemo v. St. Clairsville* (1998), 128 Ohio App.3d 178, 186, 714 N.E.2d 412, 417–418, and concluding that Markham's injury did not constitute "a physical impairment which substantially limited a major life activity," *i.e.*, "work," because "the degree of [Markham's] impairment was [not] of such nature and severity, or of such duration or expected duration, or of such permanent or long-term impact as to render him substantially limited in performing routine labor duties." The law does not require permanency or long-term impact of the handicap. In fact, it does not require that the employee suffer a handicap at all.

As Ohio Adm. Code 4112–02–05(H) points out, a "disabled person" is one who (1) suffers from a disability as defined in R.C. 4112.01(A)(13), (2) suffered from a disability at one time and no longer suffers from the disability, but is treated by his employer as suffering from the disability, or (3) *is regarded as disabled by the employer.* See *Maloney v. Barberton Citizens Hosp.* (1996), 109 Ohio App.3d 372, 378, 672 N.E.2d 223, 226–227. As a result, if the employer perceives the employee as "disabled" or suffering from a handicap, the employee *is* "handicapped" for purposes of R.C. 4112.02(A) regardless of whether the employee suffers from a handicap as defined by R.C. 4112.01(A)(13). In addition, Markham showed through his own testimony and his treating physician's "patient work update" that the shoulder injury did, in fact, substantially impair his ability to accomplish the assigned tasks.[7] The legitimacy of his claimed impairment was question for the jury.

---

6.  " 'Disabled person' includes any person who presently has a disability as defined by division (A)(13) of section 4112.01 of the Revised Code or any person who has had a disability as defined by division (A)(13) of section 4112.01 of the Revised Code, who no longer has any functional limitation, but who is treated by a respondent as having such a disability, or any person who is regarded as disabled by a respondent."

7.  This, of course, then relates to both the third element of his claim, *i.e.*, whether he could safely and substantially perform the essential functions of the job and whether he could do so with or without reasonable accommodation.

Because Markham failed to satisfy the second and third elements of his *prima facie* handicap discrimination claim, I would affirm the judge's grant of summary judgment. I do not agree with the majority's conclusion that, as a matter of law, Markham's shoulder injury did not qualify as a "handicap" for purposes of R.C. 4112.01(A)(13).[8]

---

8. I also disagree in part with the dicta contained in footnote 3, because the expiration of the ninety-day statutory limitations period does not deprive the trial court of subject matter jurisdiction. See *Neal v. Maniglia* (Apr. 6, 2000), Cuyahoga App. No. 75566, unreported, 2000 WL 354767 (Kilbane, J., dissenting).