OPINION
{¶ 1} Appellant Kim Nickerson-Mills appeals the decision of the Court of Common Pleas, Stark County, which granted summary judgment in favor of Appellee Family Medicine of Stark County, Inc. ("Family Medicine"). The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant commenced employment as an appointment scheduler with Family Medicine on August 16, 2002. On or about April 15, 2003, appellant was diagnosed with left-hand carpel tunnel syndrome. According to appellant, shortly thereafter, during the month of April 2003, she sought paperwork from her supervisor, office manager Deborah Humphries, to begin the process of filing a workers compensation claim. On May 8, 2003, appellant received a written reprimand from Humphries, chiefly regarding her telephone answering procedures. This was the first reprimand or disciplinary action she had received during her employment. Appellant was unable to obtain a First Report of Injury ("FROI") form from Family Medicine, so she obtained one from the Bureau of Workers Compensation ("BWC") itself . She filed the FROI form with the Bureau on May 9, 2003, and presented a copy to her office manager on May 14, 2003. Family Medicine rejected the claim.
 {¶ 3} A review by a BWC hearing officer was conducted on May 20, 2003. While that decision was pending, on May 22, 2003, appellant was disciplined a second time for her handling of a telephone message, and received a 1-½ day suspension without pay.
 {¶ 4} On June 3, 2003, following the aforesaid review, the BWC allowed appellant's claim. Family Medicine thereupon filed a request for reconsideration with BWC. The allowance of the claim was reversed by BWC on June 11, 2003. Appellant appealed the disallowance, and the matter was set for a hearing on July 30, 2003. In the meantime, appellant's personal physician provided her with a note that she should be off work. She therefore did not report for work after June 25, 2003. On July 28, 2003, Family Medicine informed appellant via letter that she was terminated from employment, effective July 31, 2003.
 {¶ 5} On January 9, 2004, appellant filed a five-count complaint for violation of the Americans with Disabilities Act, wrongful/retaliatory discharge (R.C. 4123.90), wrongful discharge in violation of public policy, intentional infliction of emotional distress, and an intentional conduct claim.[1] Family Medicine answered, and on October 6, 2004, filed a motion for summary judgment. Appellant filed a brief in opposition on November 5, 2004. On November 29, 2004, the trial court granted summary judgment in favor of Family Medicine on all claims, and granted Family Medicine's motion to strike evidence not in compliance with Civ.R. 56(E).
 {¶ 6} Appellant filed her notice of appeal on December 28, 2004. She herein raises the following two Assignments of Error:
 {¶ 7} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY DETERMINING THAT NO ISSUES OF MATERIAL FACT EXISTED SUPPORTING THE ELEMENTS OF PLAINTIFF'S CLAIM FOR RETALIATORY DISCHARGE FOR FILING A WORKER'S COMPENSATION CLAIM IN VIOLATION OF OHIO REVISED CODE SECTION 4123.90.
 {¶ 8} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT DEFENDANT'S CONDUCT IN TERMINATING APPELLANT WAS NOT A VIOLATION OF PUBLIC POLICY, AS SET FORTH IN OHIO REVISED CODE CHAPTERS 4112 AND 4123; AND USC CHAPTER 18, SECTION 12101.
 Standard of Review {¶ 9} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56 which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *" A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 10} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.
 I. {¶ 11} In her First Assignment of Error, appellant contends the trial court erred in granting summary judgment in favor of Family Medicine as to the retaliatory discharge claim. We disagree.
 {¶ 12} R.C. 4123.90 states in pertinent part: "* * * No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. * * *." This statute "embodies a clear public policy that employers not retaliate against employees who exercise their statutory right to file a workers' compensation claim or pursue workers' compensation benefits." White v.Mt. Carmel Med. Ctr., 150 Ohio App.3d 316, 327, 780 N.E.2d 1054,2002-Ohio-6446 (citations omitted). Nonetheless, "[e]mployees who have filed for workers' compensation benefits may be discharged for just and lawful reasons. The statute protects only against termination in direct response to the filing or pursuit of a workers' compensation claim." Id., citing Markham v. Earle M. Jorgensen Co. (2000),138 Ohio App.3d 484, 493, 741 N.E.2d 618; Russell v. Franklin Cty.Auditor (Sept. 28, 1999), Franklin App. No. 98AP-1502.
 {¶ 13} An employee establishes a prima facie case for retaliatory discharge when the employee proves that he or she (1) was injured on the job, (2) filed a workers' compensation claim, and (3) was discharged in contravention of R.C. 4123.90. Kilbarger v. Anchor Hocking Glass Co.
(1997), 120 Ohio App.3d 332, 337-338, 697 N.E.2d 1080; Wilson v.Riverside Hosp. (1985), 18 Ohio St.3d 8, 479 N.E.2d 275, at syllabus. If an employee creates a prima facie case, the burden shifts to the employer to provide a legitimate nonretaliatory explanation for the discharge.Kilbarger at 338. "[I]f the employer sets forth a legitimate, nonretaliatory reason, the burden once again shifts to the employee. The employee must then establish that the reason articulated by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Ohio Workers' Compensation Act." Id.
 {¶ 14} In the case sub judice, we initially find that appellant's prima facie case should survive summary judgment.[2] In light of the evidence in the record, reasonable minds could come to differing conclusions as to whether appellant was injured on the job and was discharged in contravention of the statute on a prima facie basis. In particular, "[f]actors taken into consideration include such punitive action as bad performance reports surfacing immediately after a workers' compensation claim was filed * * *." Doss v. Hilltop Rental Co., Hamilton App. No. C-030129, 2003-Ohio-5259, ¶ 13, citing Hohn v. Deco Tools, Inc. (Jan. 23, 1987), Lucas App. No. L-86-119. Moreover, although the exact nature was unclear as to the circumstances surrounding the date upon which appellant began inquiring about obtaining workers compensation forms, we find reasonable minds could conclude that Family Medicine was constructively aware of the pending claim prior to the two incidents of reprimanding appellant. See Deposition of Deborah Humphries at 27; Deposition of Deborah Lucas at 9.
 {¶ 15} However, this does not end our analysis. Even if the "nonretaliatory-basis" burden were thus shifted to Family Medicine (Kilbarger, supra), the record reveals administrating physician Dr. Pantelas' deposition testimony concerning the decision to terminate appellant, which occurred more than two and one-half months after she filed her formal workers compensation claim:
 {¶ 16} "We had a period of time where Kim's work performance was declining. We had uncertainty as to why she was not with us at work. We had a need for a worker. We, at the point when I was making the decision or contemplating the decision, we were aware, or I was aware by that point that she had filed for Workers' Comp and that by the time I was making the decision that she had been already denied once and that she was — that the process was about to occur that she would be reviewed again a second time.
 {¶ 17} "If I'm correct on my thinking, which I think I am, we wanted to extend her the right to be able to have that second hearing and I remember very clearly that Debbie Lucas came up to me, we had been contemplating because of her performance declining that we needed to consider moving on. We felt like we were trying to extend her as much leeway as we possibly could and that at some point we were going to need to move on but we were, let me think of the word I want to use. We were understanding that there was this Workers' Comp issue going on, we wanted to try to give her the benefit of the doubt as best we could. Upon Debbie telling me that she had been denied the second time, we felt, and being a physician with the type of medical problem that she has and feeling that it wasn't most likely work related, I felt that we were safe to proceed in letting her go based on her declining work performance. * * *." Pantelas Deposition at 12-13.
 {¶ 18} Furthermore, appellant's own testimony reveals that Family Medicine ran out of ways to accommodate her situation:
 {¶ 19} "Q. Other than the reduction in hours, had you asked them for any other changes in the work environment in order to help you with your pain?
 {¶ 20} "A. No, because there was nothing else to do. Anything else would have made it worse. If I went to the filing room, I would have been pulling and tugging charts that would have been worse, checking in, checking out. There was nothing available." Appellant's Deposition at 66.
 {¶ 21} Upon review, therefore, even though appellant may have established a prima facie case for retaliatory discharge, we find reasonable minds could only conclude that appellant's termination was legitimately based on her inability to carry out the requirements of the job, other than due to her filing of the workers compensation claim, which, at the time of her discharge from employment, had been short-lived and disallowed pending further administrative appeal. Cf. King v. E.A.Berg Sons, Inc., Trumbull App. No. 2002-T-0182, 2033-Ohio-6700, ¶ 15, distinguishing Coolidge v. Riverdale Local School (2003),100 Ohio St.3d 141, 2003-Ohio-5357. Accordingly, we hold the court did not err in granting summary judgment in favor of Family Medicine.
 {¶ 22} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 23} In her Second Assignment of Error, appellant contends the trial court erred in granting summary judgment in favor of Family Medicine as to the public policy discharge claim. We disagree.
 {¶ 24} Ohio law allows common-law wrongful-discharge claims for violations of R.C. 4123.90. Such common-law causes of action include a cause of action for termination in violation of public policy. Boyd v.Winton Hills Medical Health Center, Inc. (1999), 133 Ohio App.3d 150,159, 727 N.E.2d 137, citing Kulch v. Cultural Fibers, Inc. (1997),78 Ohio St.3d 134, 677 N.E.2d 308 (per Douglas, J., with two Justices concurring and one Justice concurring in the judgment). "Elements of a cause of action for tortious wrongful discharge in violation of public policy are that: clear public policy existed and was manifested in Constitution, statute or administrative regulation, or in the common law (clarity element); dismissing employees under such circumstances would jeopardize public policy (jeopardy element); plaintiff's dismissal was motivated by conduct related to the public policy (causation element); and employer lacked overriding legitimate business justification for dismissal (overriding justification element)". Kulch, supra, at 151. However, based on our discussion in regard to appellant's First Assignment of Error, we find summary judgment was properly granted in favor of Family Medicine, as reasonable minds could only conclude, at minimum, that appellant did not meet the "overriding justification" element of a public policy discharge claim.
 {¶ 25} Appellant's Second Assignment of Error is overruled.
 {¶ 26} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.
Wise, J., Gwin, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs to appellant.
[1] Of the original five claims, this appeal focuses only on the second and the third.
[2] Family Medicine urges in its brief that the evidence that was stricken by the trial court be ignored by this Court. However, as this is a de novo review, and because the ruling to strike was part of the summary judgment entry under appeal, we conclude we are not bound by the trial court's ruling.