[Cite as *Lebron v. A&A Safety, Inc.*, 2012-Ohio-1637.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96976**

---

## ESTABAN LEBRON

PLAINTIFF-APPELLANT

vs.

## A&A SAFETY, INC.

DEFENDANT-APPELLEE

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-737167

**BEFORE:** Cooney, P.J., Keough, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 12, 2012

**ATTORNEY FOR APPELLANT**

Alan I. Goodman
55 Public Square, Suite 1300
Cleveland, OH   44113-1971


**ATTORNEY FOR APPELLEE**

Karen Soehnlen McQueen
Krugliak, Wilkins, Griffiths & Doughe
4775 Munson Street NW
Canton, Ohio 44735

COLLEEN CONWAY COONEY, P.J.:

{¶1} Plaintiff-appellant, Estaban Lebron ("Lebron"), appeals the trial court's grant of summary judgment in favor of defendant-appellee, A&A Safety, Inc. ("A&A"). We find no merit to the appeal and affirm.

{¶2} In his complaint, Lebron alleges A&A wrongfully terminated his employment in retaliation for his filing and pursuing a claim for workers' compensation benefits. A&A is involved in the heavy road construction industry. The majority of its employees work only during road construction season, which varies each year depending on the weather.

{¶3} A&A hired Lebron to work in its Cleveland branch in 2004. Lebron worked as a "striper" or "tailgunner," which required his operating a machine that released paint on the road. On December 12, 2006, Lebron was injured in an accident at work and filed a workers' compensation claim. He returned to work within days of the accident, with restrictions. He completed his treatment, which consisted of physical therapy and pain medication, in March 2007, and returned to work without restrictions in April 2007.

{¶4} Lebron worked the 2004 through 2008 seasons, but was not called back for the 2009 season. He claims A&A did not call him back to work because he was pursuing additional workers' compensation claims. A&A claims it did not call Lebron back

because it had a 44% reduction in work that season.     Jeffrey Chase ("Chase"), the manager of A&A's Cleveland branch, testified that when he was confronted with a significant decrease in work, he recalled those individuals whom he believed had the best skills and those skills most suited for the available work.

{¶5}    When Lebron was not recalled for work in 2009, he filed this wrongful termination action against A&A, claiming it fired him in retaliation for his new workers' compensation claims.    After conducting discovery, A&A filed a motion for summary judgment, which the court granted.    Lebron now appeals, raising three assignments of error.

## Standard of Review

{¶6}    An appellate court reviews a trial court's decision on a motion for summary judgment de novo.    *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).    Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party.    *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), citing *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus.

## Excluded Documents

**{¶7}** In the first assignment of error, Lebron argues the court erred in not considering certain documents submitted in support of his brief in opposition to A&A's motion for summary judgment. Lebron contends the documents, which consisted of records from the Ohio Bureau of Workers' Compensation and the Ohio Industrial Commission websites, did not have to be authenticated because they are public records available on the internet. He asserts that the court could have taken judicial notice of these documents.

**{¶8}** Civ.R. 56(C) places strict limitations upon the type of documentary evidence that a party may use in support of or in opposition to summary judgment. Documents merely attached to a summary judgment motion, even though allegedly certified as official records, are not cognizable. *Bass-Fineberg Leasing, Inc. v. Keller*, 8th Dist. No. 96107, 2011-Ohio-3989, ¶ 11, citing *Spier v. Am. Univ. of the Caribbean,* 3 Ohio App.3d 28, 29, 443 N.E.2d 1021 (1st Dist.1981). If a document does not fall within one of the categories of evidence listed in Civ.R. 56(C), it can only be introduced as proper evidentiary material when it is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Biskupich v. Westbay Manor Nursing Home*, 33 Ohio App.3d 220, 222, 515 N.E.2d 632 (8th Dist.1986).

**{¶9}** Documents purportedly printed from a website do not comport with the strict limitations on documentary evidence set forth in Civ.R. 56(C). Without an affidavit

from a competent witness to verify the documents, the trial court was not permitted to consider them and properly excluded them.

## Judicial Notice

**{¶10}** Lebron further argues that the court could have and should have taken judicial notice of the workers' compensation documents. He contends the website contains public records.

**{¶11}** Under Evid.R. 201, a court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." It is impossible to determine the credibility and reliability of documents purportedly printed from a website. The reliability of such documents is questionable, unless verified by a sworn affidavit. In *Rude v. NUCO Edn. Corp.*, 9th Dist. No. 25549, 2011-Ohio-6789, ¶ 16, the court held that it could not take judicial notice of facts posted on a website because it "did not supply the information in a manner that allows for judicial notice of a discrete fact without further inquiry." Therefore, the trial court properly disregarded Lebron's unverified documents.

**{¶12}** The first assignment of error is overruled.

## Wrongful Termination

{¶13} In his second and third assignments of error, Lebron asserts that (1) the trial court erred in finding that he failed to establish a prima facie case of wrongful termination, and (2) he failed to present evidence of a causal connection between his workers' compensation claim and the alleged retaliatory discharge. We discuss these assigned errors together because they are interrelated.

{¶14} Lebron argues A&A chose not to call him back to work for the 2009 season simply because he was pursuing additional workers' compensation claims. He sought to have additional claims allowed to include a disc bulge and herniation of the spine as well as lost wages. He contends that the "[t]emporal proximity between the Appellee's failure to recall Appellant and his pursuit of his workers' compensation claim is deemed indirect evidence such as to permit an inference of retaliation." We disagree.

{¶15} To establish a prima facie case for retaliatory discharge, an employee must prove that he or she: (1) was injured on the job; (2) filed a workers' compensation claim; and (3) was discharged in contravention of R.C. 4123.90. *Wilson v. Riverside Hosp*., 18 Ohio St.3d 8, 479 N.E.2d 275 (1985), syllabus.

{¶16} R.C. 4123.90 provides in pertinent part: "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim * * * under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that

employer." The workers' compensation statute mandates that R.C. 4123.90 "be liberally construed in favor of employees." R.C. 4123.95.

{¶17} If the plaintiff establishes his or her prima facie case, then the burden of production shifts to the employer to articulate a legitimate nonretaliatory reason for its action. *Ayers v. Progressive RSC, Inc.*, 8th Dist. No. 94523, 2010-Ohio-4687, ¶ 14. "[T]he burden does not require the employer to prove the absence of a retaliatory discharge. It merely requires the employer to set forth a legitimate, nonretaliatory reason for the employee's discharge." *Kilbarger v. Anchor Hocking Glass Co.*, 120 Ohio App.3d 332, 338, 697 N.E.2d 1080 (5th Dist.1997).

{¶18} If the employer sets forth a legitimate, nonretaliatory reason for the employee's discharge, the employee must establish that the reason given by the employer is pretextual, and that the real reason for the discharge was the employee's protected activity under the Workers' Compensation Act. *Markham v. Earle M. Jorgensen Co.*, 138 Ohio App.3d 484, 492, 741 N.E.2d 618 (8th Dist.2000). Although the burden of proof shifts back and forth between the employee and the employer, the ultimate burden remains at all times on the employee to prove that the employer had a retaliatory motive for the discharge. *Id.*, citing *Bertrand v. Collinwood Serv. Ctr.*, 8th Dist. No. 58508, 1991 WL 81487 (May 16, 1991).

{¶19} The scope of R.C. 4123.90 is narrow and protects only against adverse employment actions taken in direct response to the filing or pursuit of a workers'

compensation claim. "When considering whether an employer has a legitimate nonretaliatory reason for discharging an employee, the court must keep in mind the fact that an employee who files a workers' compensation claim is not insulated from discharge." *Id.* R.C. 4123.90 does not suspend the rights of an employer nor does it shield an employee from otherwise lawful actions taken by the employer. "To hold otherwise would render employers virtually powerless to combat fraud and/or blatant inefficaciousness on the part of any employee who happened to have a pending workers' compensation claim." *Id.* at 494.

{¶20} To establish pretext, a plaintiff must demonstrate "'that the proffered reason (1) has no basis in fact; (2) did not actually motivate the employer's challenged conduct; or (3) was insufficient to warrant the challenged conduct.'" *Lascu v. Apex Paper Box Co.*, 8th Dist. No. 95091, 2011-Ohio-4407, ¶ 27, quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000). Regardless of which option is chosen, the plaintiff must produce sufficient evidence from which the jury could reasonably reject the employer's explanation and infer that the employer intentionally retaliated against him. *Id.*, citing *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003).

{¶21} Lebron does not argue that A&A's proffered reason has no basis in fact, nor does he argue the proffered reason was insufficient to warrant A&A's action. Rather, Lebron suggests the proffered reason did not actually motivate the adverse action. We disagree.

{¶22} Chase testified by way of affidavit and deposition that the drastic reduction in available work was the primary reason he decided not to recall Lebron to work. Chase testified as follows:

> Q: Why did you rehire him all the previous years and not this year?
>
> A: Because this year we had an economic downturn, and I was looking at not calling everything — in a good year everybody comes back within a two- three-week period because we get busy all at once. This year highway — heavy-highway work, especially the subcontractor, has been on the wane, and we were looking at bringing people back as needed as we normally do based on their skill levels.

{¶23} In deciding which employees to recall, seniority was not a consideration. Chase explained that although he recalled some employees with less seniority than Lebron, those employees demonstrated greater skills and therefore offered more flexibility to perform varying kinds of tasks required by the limited amount of available work. Lebron's skills were limited because he performed 90% tailgunning, and striping was affected more than other kinds of work. Chase explained during his deposition:

> He's a good employee but others surpassed him in skills, some of them having a CDL [a Commercial Driver's License], more experience. He was paint striper, tailgunner, and, again, he was a good employee but didn't have the ambition to do more.

{¶24} Although Chase knew that Lebron filed a workers' compensation claim in 2006, he called Lebron back to work in 2007 and 2008. There is no evidence Chase knew Lebron was pursuing an additional claim in 2009 when he decided not to recall Lebron. A&A's main office is located in Amelia, Ohio, which is located near

Cincinnati. Anna Knechtly ("Knechtly"), A&A's human resource manager who works in the main office, received all the paperwork for A&A's workers' compensation claims. She stated in her affidavit that she did not communicate with branch managers, supervisors, or other employees in the local branches regarding workers' compensation claims or claims for additional allowances.

{¶25} Knechtly further stated that the only communication she made to anyone in a local branch regarding any workers' compensation claim would be to notify them of any changes in work limitations that employees have communicated to her. Because Knechtly never received any notification of changes in any work limitations for Lebron after the initial receipt of those limitations in 2006 and 2007, she did not communicate with Chase or anyone else at the Cleveland branch regarding Lebron's additional workers' compensation claim. Because there is no evidence that Chase knew about Lebron's additional workers' compensation claim when he decided not to recall Lebron back to work for the 2009 season, Lebron fails to establish a prima facie case of retaliatory discharge.

{¶26} Further, Lebron relies solely on his own affidavit to disprove A&A's legitimate reason for his discharge. In his affidavit, he asserted that it is "hard to believe" that Knechtly did not tell Chase about his workers' compensation claims. He also claims that Chase "must have known" about Lebron's claims because he appeared with Knechtly at a workers' compensation hearing before the Industrial Commission of

Ohio on March 13, 2008, to determine Lebron's weekly wage. To support these allegations, Lebron relies on documents printed off the workers' compensation website that we have already determined do not comply with the strict requirements of Civ.R. 56(C) and therefore are not admissible.

{¶27} However, even if these documents were admissible, they still do not help Lebron's case. The hearing on March 13, 2008 was held to determine the amount of compensation he lost from December 12, 2006 (the date of injury) to April 26, 2007 (the date he could return to full duties). There is no evidence that Chase knew this hearing related to a new claim. In fact, in his affidavit, Chase specifically stated that he was unaware that Lebron had made any attempts to pursue additional claims. Because Chase is not responsible for handling A&A's workers' compensation claims and is not familiar with the details of each claim, he could have easily concluded that this was an ongoing process as opposed to a new claim.

{¶28} Morever, Chase recalled Lebron for the 2008 season, which would have lasted through the summer of 2008, months after the March 13th workers' compensation hearing. If anything, evidence that Chase knew about Lebron's claim for lost wages in the spring of 2008 strengthens A&A's argument that his dismissal was not related to his workers' compensation claim. The fact is, despite knowledge of his wage claim, Chase did not terminate Lebron in 2008 after he attended the hearing on that claim. In 2009, Chase recalled workers as needed to complete a limited amount of work.

**{¶29}** Under these facts, we find not only that Lebron failed to establish a prima facie case of retaliatory discharge, we also find no evidence that A&A's reason for not recalling Lebron back to work in 2009 was pretextual. Accordingly, the second and third assignments of error are overruled.

**{¶30}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR