BRENTLINGER, Appellant,

v.

HIGHLIGHTS FOR CHILDREN, Appellee.

[Cite as *Brentlinger v. Highlights for Children* (2001), 142 Ohio App.3d 25.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–738.

Decided March 27, 2001.

26

28

*Farlow & Lewis, L.L.C.,* and *Emily J. Lewis,* for appellant.

*Schottenstein, Zox & Dunn, Susan Porter, Michael Becker* and *Angelique M. Paul,* for appellee.

McCormac, Judge.

Plaintiff-appellant, Rachel Brentlinger, appeals the order of the Franklin County Court of Common Pleas granting defendant-appellee Highlights for

Children's motion for summary judgment, filed August 12, 1999. In her complaint, appellant set forth seven claims for relief arising from her allegation that her immediate supervisor at Highlights for Children, Kathleen Towslee, subjected her to same-sex sexual harassment. This appeal challenges the grant of summary judgment as to three of appellant's claims, namely, sexual harassment, retaliatory discharge, and discharge in violation of public policy. Appellant asserts the following assignments of error:

FIRST ASSIGNMENT OF ERROR

"The trial court improperly granted summary judgment on appellant's sexual harassment claim under Ohio Revised Code [Chapter] 4112."

SECOND ASSIGNMENT OF ERROR

"The trial court improperly granted summary judgment on appellant's retaliatory discharge claim under Ohio Revised Code [Chapter] 4112."

THIRD ASSIGNMENT OF ERROR

"The trial court improperly granted summary judgment on appellant's public policy/wrongful discharge claim."

Preliminarily, as this matter arises out of the trial court's grant of summary judgment, pursuant to Civ.R. 56, we review the trial court's determination independently and without deference. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158. In conducting our review, we apply the same standard as the trial court. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 767–768.

In accordance with Civ.R. 56, summary judgment may be granted only if, viewing the evidence most strongly in favor of the nonmoving party, no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come only to a conclusion that is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 275–276. If the moving party makes that showing, the nonmoving party then must produce evidence on any issue for which the party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (*Celotex Corp. v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

Appellant was hired by appellee as a customer service supervisor on March 3, 1997. Appellant's tenure with appellee lasted a little over a year and one-half,

when, on September 7, 1998, she was discharged. Because this appeal is from the trial court's grant of summary judgment, the facts must be construed most strongly in favor of appellant. Appellant's deposition and affidavit reveal the following facts in relation to the disputed claims.

The genesis of appellant's lawsuit was four incidents of improper touching by appellant's supervisor and some other miscellaneous verbal expressions and hand gestures that appellant found to be offensive. In May 1997, three months after appellant began her employment with appellee, Towslee pinched her on the buttocks. The second pinching incident took place sometime between May and August 1997. Sonya Souders, a coworker, witnessed this incident. The last pinching incident took place in October 1997. Appellant protested Towslee's action and requested that she, Towslee, not do that. According to appellant, Towslee's response was "so sue me." Nancy Reese, another coworker, overheard the latter part. Finally, on October 23, 1997, Towslee swatted appellant's buttocks with a folder of papers. Again, Reese witnessed this incident.

In early November 1997, appellant complained to Steve Matheny, the human resources manager. Matheny offered to speak with Towslee. Appellant agreed but requested that he not identify her to Towslee for fear of retaliation. On December 12, 1997, Matheny met with Towslee and informed her of complaints by appellant and others in her department regarding communication issues, but no specifics were discussed. Apparently Towslee came out of the meeting with the impression that others in the department were the issues, not her personally. Appellant then confronted Towslee and demanded that the pinching and swatting incidents not happen again. Appellant reported her conversation with Towslee to Matheny.

On December 23, 1997, appellant met with Bob Mills, Towslee's immediate supervisor, and complained to him of Towslee's behavior. Mills indicated that he would talk to Towslee after the holidays and that an outside consultant may be brought in to address the situation. By February 9, 1998, appellant had not heard back from Mills, so she approached him and Matheny and expressed her discomfort in working with Towslee, even though no specific incidents of touching were reported. On March 16, 1998, an outside consulting firm was retained by appellee. The consulting firm contacted appellant, where they left a message on her voice mail requesting that she contact them to schedule an appointment. Because appellant had already sought legal counsel, she did not call back the consulting firm; hence, she never met with it.

On March 16, 1998, appellant's counsel forwarded a letter to appellee, addressed to its CEO, Gary Myers. Upon receipt of the letter, appellee contacted its own legal counsel and promptly removed Towslee from the customer service department. A full investigation followed, where appellee concluded that Tow-

slee's actions were inappropriate and could be perceived as sexual harassment. On March 27, 1998, Towslee was dismissed from her employment with appellee.

Appellant began reporting to Eaton after the discharge of Towslee. In June 1998, appellant received a four-percent increase without any prior performance evaluation, but there is testimony in the record that Eaton had told appellant that she was doing a great job. The record indicates that, between June and early August, appellant had approached her supervisor, Eaton, several times with regard to addressing communication and morale issues with other employees. There is also evidence of other employees lodging complaints against appellant with her supervisor. We will address such facts, as the analysis below requires.

On August 11, 1998, appellant asked Matheny if appellee would reimburse her for the legal expenses she incurred when she sought legal counsel back in March 1998. Matheny informed appellant that he would take up the issue with the CEO and get back with her while expressing his doubts as to the merits of her request. Ten days later, Matheny informed appellant that the company would not reimburse appellant and that it had not been necessary for appellant to seek legal counsel in the first place. Around this time, also, it appears that several employees spoke with Eaton with regard to some communication issues and tensions among those working under appellant's supervision. This culminated in a letter of reprimand, a ninety-day probation, and a forced week off with pay for appellant. Appellant protested to the time off because she felt that she should not be taking time off at a time when she was needed at work. She felt, and expressed the same to her superior, that the complaints against her were acts of retaliation against her for complaining about Towslee and the latter's subsequent dismissal.

On September 3, 1998, while appellant was still on leave, she met with Matheny and Eaton. Several pending issues were discussed, all of which relate to the various complaints above. The next day, Matheny and Eaton met with several other employees who worked, directly or indirectly, with appellant. Some of those employees had previously complained about appellant to Matheny or Eaton; others, however, were discussing issues relating to appellant for the first time. Through these interviews, Matheny and Eaton obtained leads that led to more interviews with other employees who had contact with appellant in various settings during her employment with appellee. Based on the information gathered during the above meetings and interviews, and while appellant was still on her "forced" leave of absence, appellee's management called appellant on the telephone and discharged her from appellee's employment.

In her first assignment of error, appellant contends that the trial court improperly granted summary judgment on her sexual harassment claim. Appellant argues that an issue of fact exists whether she subjectively viewed her

supervisor's conduct as sexual harassment, whether appellee breached its duty to exercise reasonable care to prevent and properly correct the conduct in question, and whether appellant failed to take advantage of any preventive and corrective opportunities the employer provided or to otherwise avoid harm.

In *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715, 729 N.E.2d 813, this court summarized the law relevant to sexual harassment as developed by the United States Supreme Court in cases interpreting Title VII of the Civil Rights Act of 1964, as follows:

"R.C. 4112.02(A) prohibits an employer from engaging in sexual discrimination against an employee. Case law interpreting and applying Title VII of the Civil Rights Act of 1964, Section 701 *et seq.*, as amended, Section 2000e *et seq.*, Title 42, U.S.Code ('Title VII'), is generally applicable to cases involving R.C. Chapter 4112. *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 703 N.E.2d 782. Sexual harassment that constitutes discrimination on the basis of sex and violates Title VII is generally categorized as either a *quid pro quo* claim or a hostile work environment claim. The terms '*quid pro quo*' and 'hostile work environment' serve to distinguish roughly between cases in which threats are carried out (*quid pro quo*) and cases in which threats are not carried out or are absent altogether (hostile work environment). *Burlington Industries, Inc. v. Ellerth* (1998), 524 U.S. 742, 751–755, 118 S.Ct. 2257, 2263–2265, 141 L.Ed.2d 633, 646–649.

"Conduct that is merely offensive is not actionable as hostile work environment harassment under Title VII. *Harris v. Forklift Systems, Inc.* (1993), 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 301–302. Title VII is violated '[w]hen the workplace is permeated with "discriminatory intimidation, ridicule, and insult," * * * "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." ' *Id.* at 21, 114 S.Ct. at 370, 126 L.Ed.2d at 301. To be actionable under Title VII, conduct must be severe or pervasive enough to create both an objectively hostile or abusive work environment—one that a reasonable person would find hostile or abusive—and a subjectively hostile work environment—one that the victim perceived to be hostile or abusive. Whether an environment is hostile or abusive must be determined by looking at all the circumstances. While no single factor is required, circumstances to consider may include the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating as opposed to merely an offensive utterance, whether the conduct unreasonably interferes with an employee's work performance, and whether psychological harm results.

"Employer liability for hostile work environment harassment varies depending upon whether the alleged harasser is a supervisor or a co-worker.

When the alleged harasser is a supervisor, the employer may be vicariously liable. *Burlington,* 524 U.S. at 763–765, 118 S.Ct. at 2270, 141 L.Ed.2d at 654–655. Under this scenario, when harassment by a supervisor with authority over the employee culminates in a tangible employment action against the plaintiff, the employer is subject to vicarious liability and the analysis ends. *Id.* at 763–765, 118 S.Ct. at 2270, 141 L.Ed.2d at 654–655. Where no tangible employment action was taken, but a hostile work environment was created, the employer may avail itself of an affirmative defense to liability. To successfully raise this affirmative defense, an employer must establish two elements by a preponderance of the evidence: first, that the employer exercised reasonable care to prevent and correct properly any sexually harassing behavior, and second, that the plaintiff-employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

■ "When the alleged harasser is not a supervisor, but a co-worker, the employer may be liable to the plaintiff based on its own negligence. Under this scenario, an employer may be liable for the sexual harassment of an employee by a co-worker when the employer knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action. *Blankenship v. Parke Care Ctrs., Inc.* (C.A.6, 1997), 123 F.3d 868, 872–873." *Id.* at 722–724, 729 N.E.2d at 817–820.

We agree with the trial court that appellant's claim against her former employer is one of a hostile work environment, as distinguished from a *quid pro quo* sexual harassment claim. As indicated in *Burlington Industries, Inc. v. Ellerth* (1998), 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633, in a hostile work environment claim the employer may be vicariously liable for the actions of a supervisor. There is a distinction, however, between sexual harassment where the harassment results in a tangible employment action taken by the supervisor against the employee, and one where no such action was taken but a hostile work environment is nevertheless created. Where a tangible employment action is taken, the employer is automatically liable. But, if the harassing supervisor takes no tangible action and the employee proved sexual harassment because of hostile work environment under both an objective and a subjective standard, the employer may avail itself of an affirmative defense. In order to avoid liability, the employer must establish that it exercised reasonable care to correct the harassing behavior, and that the complaining employee unreasonably failed to take advantage of available preventive or corrective mechanisms established by the employer, or to otherwise avoid harm. See *Burlington, supra.*

Consistent with the summary judgment standard, we must view the evidence in a light most favorable to appellant. In the sexual harassment context, we must look at the totality of the circumstances surrounding the work environment in

determining whether a hostile work environment existed. Appellant argued below, and insists here, that she viewed Towslee's touching incidents and sexually oriented comments as sexual harassment. The trial court appears to have viewed appellant's evidence in a light most favorable to appellee instead of appellant. The court appears to have based its decision on this issue on the fact that appellant asked Matheny not to identify her as the complaining party when addressing the issue with Towslee. Based on the record, there is evidence and inferences that appellant had good reasons for wishing to keep her identity confidential, either for fear of reprisal from her immediate supervisor or because she did not wish to poison the atmosphere of the department and workspace that she and Towslee shared. No one is claiming that appellant was a willing participant or recipient of Towslee's behavior. Appellant asserted adequate reasons for requesting that she not be identified. See *Williams v. Gen. Motors Corp.* (C.A.6, 1999), 187 F.3d 553.

Appellee argues that appellant's deposition and affidavit testimony are in contradiction to her claim that she viewed Towslee's behavior to be sexual harassment. Specifically, appellee contends that, because appellant went to lunch with Towslee and because she told her supervisor that the pinching and swatting undercut her credibility with her subordinates in that it made her feel unimportant, and that the behavior portrayed her to be controlled by Towslee, appellant could not have subjectively viewed Towslee's behavior as sexual harassment. We disagree. The fact that appellant attempted to work with her supervisor to improve the work environment and to take a less-than-confrontational approach should not work to discredit appellant's subjective judgment as a matter of law. When taken as a whole, and viewed in a light most favorable to appellant, the pinching, swatting, and various gestures and comments are sufficient to create an issue of fact as to whether appellant established the subjective element of her sexual harassment claim.

Appellant next argues that the trial court erred in analyzing both prongs of the *Burlington* affirmative defense. As to the first prong, appellant contends that an issue of fact exists whether appellee exercised reasonable care to prevent and promptly correct Towslee's harassing behavior. She further argues that appellee failed to exercise reasonable care to prevent and timely correct the conditions of which she complained.

The record indicates that appellant first reported the pinching and swatting incidents to her employer in November 1997. In March 1998, appellant's attorney forwarded a letter to appellee clearly indicating that appellant viewed Towslee's touching as sexual in nature and demanded that it stop. There is no dispute that, upon receipt of that letter, appellee acted reasonably in order to "promptly" correct the offensive behavior. The parties, however, dispute wheth-

er the employer acted reasonably between November 1997, when appellant first reported the incidents, and March 1998, when appellant's attorney sent the letter referred to above. The trial court found that appellee acted reasonably under the circumstances, considering the fact that appellant asked that her identity not be revealed as the complaining party, thus restricting appellee's ability to address the complaint properly. Appellee argues that it had satisfied the first element of the defense by having an anti-harassment policy, with a complaint procedure, in place. In making this argument, appellee relies on *Leugers v. Pinkerton Security & Investigative Serv.* (C.A.6, 2000), No. 98–3501, 2000 WL 191685. In *Leugers,* the Sixth Circuit relied on *Burlington* in concluding that the employer proved that it acted reasonably simply by showing that it had an anti-harassment policy. While this may have been sufficient under the circumstances of the *Leugers* case, it is not necessarily true in all cases.

In the case at bar, appellant informed her employer of the offending behavior of Towslee in November 1997. In *Leugers,* when the plaintiff complained to her employer of the offending behavior of her supervisor, the employer immediately conducted an investigation that led to the supervisor's termination. Additionally, Mrs. Leugers attempted to hold her employer liable because it allegedly had notice of the supervisor's harassing behavior. In fact, the incident Mrs. Leugers claimed to have given her employer such notice had been investigated and it was concluded that it was without merit. Finally, the employer in *Leugers* had a sexual harassment policy that allowed a given employee to lodge a complaint in various different ways, including anonymously. Accordingly, the *Leugers* court concluded that the existence of the policy was sufficient to show that the employer acted reasonably given the facts of that case. Further, the Supreme Court in *Burlington* indicated that a showing by the employer that it has a policy in place is one of the factors to be considered, whether the employer acted reasonably, but not the only factor in every case.

Appellant here presented evidence that, if believed by a trier of fact, could result in a favorable ruling. Appellee had the information as of November 1997, but did not act on it until March 1998. The trial court found appellee's explanation for its limited investigation and response after the initial complaint of November 1997 to be reasonable because appellant did not want her identity to be revealed. In our view, however, it is the acts of the employer that must be evaluated in determining whether it acted reasonably, rather than blaming its failure on appellant, where appellant did bring the matter to appellee's attention. Even if appellee honored appellant's request, viewing the evidence in a light most favorable to appellant, a reasonable trier of fact could find that appellee's investigation was inadequate. According to evidence in the record, appellee's investigation was so vague that Towslee was not even aware that her conduct was

in issue. If appellee felt that it could not conduct an adequate investigation if appellant's identity was not revealed, it should have discussed the problem with appellant and attempted to obtain her consent.

Thus, a genuine issue of fact exists as to whether appellant acted unreasonably by placing limitations on the unimpeded use of the anti-harassment policy instituted by her employer. A court must view the record as a whole in determining whether a genuine issue of fact exists. Appellee cites *Leugers* in support of its contention that, because appellant waited from May to November 1997 to report the harassing incidents, she therefore failed to avoid harm and, thus, appellee proved its burden under *Burlington*. We do not believe *Leugers* is applicable here.

The question is not whether appellant acted unreasonably prior to reporting the harassing incidents; rather, it is whether she acted unreasonably between November 1997 and March 1998. By concluding that appellant acted unreasonably, the trial court did not consider all the facts in the record, which, viewed in a light most favorable to appellant, presents a genuine issue of fact and precludes summary judgment.

Therefore, we find that the trial court erred in granting appellee's motion for summary judgment with respect to appellant's sexual harassment claim. Appellant's first assignment of error is sustained.

 In her second assignment of error, appellant contends that a genuine issue of material fact exists regarding whether appellant has shown a causal link between her protected activity and her discharge, and whether appellee's proffered business reason for termination is a pretext for retaliation.

Under Ohio law, it is "an unlawful discriminatory practice":

"(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice * * * or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing * * *." R.C. 4112.02.

 In order to prevail in a retaliation claim, the plaintiff must first establish a prima facie case by showing that she engaged in a statutory protected activity, that she was subject to some adverse employment action, and that there was a causal link between the protected activity and the adverse action. If the plaintiff establishes his or her prima facie case, then the burden shifts to the employer to articulate a legitimate, nonretaliatory justification for its action. If the employer succeeds in doing so, the burden shifts back to the employee to show that the employer's explanation was mere pretext. See *Courtney v. Landair Transport, Inc.* (C.A.6, 2000), 227 F.3d 559.

The trial court found that appellant failed to establish a casual link between the protected activity and the adverse action. Appellant argues that a genuine issue of fact exists whether appellant presented sufficient evidence to establish the causal link necessary to meet her burden. Viewing this evidence in a light most favorable to appellant, we reach the same conclusion as did the trial court. We also agree with the trial court that, even if appellant had been successful in establishing her prime facie case, appellee has articulated a legitimate, nonretaliatory reason for terminating appellant. Appellant did not produce sufficient proof to show that her employer's stated reasons for her termination were a pretext for retaliation. Appellant was even given a pay raise after the complaint that resulted in Towslee's dismissal. The evidence does not support a claim of retaliation stemming from bringing the complaint.

With regard to the timing issue, appellant argues that the trial court miscalculated the time between her engaging in a protected activity and her discharge. According to appellant, she was discharged days after requesting that the company reimburse her for her legal costs incurred when she initially consulted an attorney, who, in turn, wrote a letter to appellee demanding an end to the sexual harassment to which appellant had been subjected. The trial court concluded that requesting reimbursement for legal expenses is not a protected activity under R.C. 4112.02(I). We agree with the trial court's conclusion on this issue. The protected activity appellant engaged in was the lodging of the complaint, which was ten months prior to her discharge. Even the hiring of the attorney took place over five months prior to her discharge. The result of the complaint by appellant's attorney was that the company immediately conducted an investigation that led to the discharge of Towslee. Appellant's second assignment of error is overruled.

In her third assignment of error, appellant contends that a genuine issue of fact exists regarding whether her discharge violated public policy so as to create an exception to the employment-at-will doctrine.

Appellant argues that the trial court erred in focusing on her August 1998 request for reimbursement for legal expenses in dismissing her public policy claim, when the court should have considered her attorney's involvement in all the events of 1998. In effect, appellant agrees that seeking reimbursement is not a protected activity and cannot be the basis for a public policy claim. Seeking the advice of an attorney, however, is a protected activity. *Simonelli v. Anderson Concrete Co.* (1994), 99 Ohio App.3d 254, 650 N.E.2d 488. But the record in the case at bar does not support the contention that appellee discharged appellant because she sought the advice and counsel of an attorney. Nor was her discharge in retaliation for the same. Furthermore, seeking the advice of an attorney and requesting reimbursement for legal expenses are not the same

activities. The former is a protected activity, whereas the latter is not. Appellant's protected action was in March 1998, and, as appellee points out and the record reflects, that action ended in the investigation and discharge of the harassing supervisor.

We conclude that appellant's claim of wrongful discharge cannot be based on R.C. Chapter 4112. This leads us to treat appellant's discharge in the context of an employment at will. In such a case, either the employer or the employee may terminate the relationship for whatever reason or for no reason at all. Appellee did not violate public policy when it discharged appellant. Appellant's third assignment of error is overruled.

Appellant's first assignment of error is sustained and appellant's second and third assignments of error are overruled. The judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further procedure consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

TYACK and LAZARUS, JJ., concur.

JOHN W. MCCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.