OPINION
In case No. 00AP-1146, plaintiff-appellant, James A. Sidenstricker, II, appeals from a judgment of the Franklin County Court of Common Pleas granting a directed verdict to defendant-appellee, Miller Pavement Maintenance, Inc., on plaintiff's claims of breach of contract, promissory estoppel, retaliatory discharge in violation of R.C. 4123.90, and tortious wrongful discharge in violation of public policy established under R.C. 4123.90. In case No. 00AP-1460, plaintiff appeals from a judgment of the trial court overruling plaintiff's motion for sanctions. In these consolidated appeals, defendant cross-appeals from the trial court's denial of defendant's motion for summary judgment.
Defendant is an asphalt patching and paving contractor based in Franklin County, and Pierce ("Pete") Miller is its president. Plaintiff was employed by defendant during its 1996 and 1997 construction seasons as a laborer and screed operator. During the paving process, a screed operator rides on the back of an asphalt paving machine and adjusts the level of asphalt being laid by the paver. A laborer throws shovels of heavy, hot asphalt to fill in low spots in the paving surface. A screed operator may also shovel the asphalt as necessary during paving operations.
In late January 1998, during the off-season, plaintiff had surgery on his right knee. In preparation for the surgery, plaintiff had a physical on January 22, 1998. During the physical, plaintiff complained of right side groin pain, and a physician consequently checked him for, but did not find, a hernia.
According to plaintiff, while he was still recuperating from his knee surgery, plaintiff was notified of and attended an equipment and paving procedures seminar and a pre-hiring meeting held by defendant on March 27, 1998. Although plaintiff was considering a job offer from another construction firm, plaintiff spoke with one of defendant's foremen some time after the pre-hiring meeting and accepted a job with defendant on one of its paving crews. Plaintiff obtained a doctor's release certifying that he was able to return to work on April 13, 1998, and plaintiff reported to work for defendant on that date as a screed operator, the position plaintiff preferred. Plaintiff apparently experienced no pain or physical discomfort in his lower abdomen the first week of work but, according to plaintiff, "sometime" during the second week of work he started to have such pain: "not the kind of dropping down to knees pain, but it just hurt." According to plaintiff, the more he worked, the more it hurt.
On April 30, 1998, plaintiff went to his primary care physician, Karl E. Haecker, D.O., and was examined by a physician's assistant who, unable to diagnose the source of plaintiff's pain, gave him no medication for the pain. His doctor referred plaintiff to a specialist, urologist Roger G. Amigo, D.O. Plaintiff continued to work until he saw Dr. Amigo on May 7.
On Friday, May 8, plaintiff informed his foreman he had been diagnosed with a hernia. Shortly thereafter, plaintiff was reassigned to be a laborer, a position plaintiff considered to be a demotion. On his foreman's suggestion, plaintiff went to defendant's office, informed one of the office personnel that he was diagnosed with a hernia, and asked for paperwork to file a workers' compensation claim. Plaintiff was not given the paperwork, and instead met with Pete Miller. According to plaintiff, Miller told plaintiff that workers' compensation premiums had increased, requested that plaintiff not file a workers' compensation claim, and told plaintiff that he would deny a claim immediately. Plaintiff reportedly told Miller he was going to his family doctor the next day for a second opinion, and Miller told him not to return to work until the following Monday morning. Plaintiff's doctor visit confirmed he had a right inguinal hernia, which was to be treated with surgery that could be postponed until the following January, in the off-season.
When plaintiff returned to work on the following Monday, defendant requested that plaintiff get a doctor's slip stating he could return to work without restrictions. Plaintiff made three trips to Dr. Haecker's office to obtain a form that was acceptable to defendant, authorizing plaintiff to return to work without restrictions. On submitting the form to defendant, plaintiff reportedly told Miller and defendant's office worker that he intended to file a workers' compensation claim, and he asked for whatever paperwork was needed for the claim. According to plaintiff, Miller told him that although he had concerns about plaintiff filing a workers' compensation claim, he could not by law deny plaintiff the right to do so. Plaintiff was given a Miller Pavement accident report form to fill out, and plaintiff apparently believed that in completing the form he was starting his workers' compensation claim.
On the accident report form, plaintiff crossed out "accident" and wrote, "Diagnosed 5-7-98." Under "location of accident," plaintiff provided no information. In a section that asked how the accident happened, plaintiff wrote, "[j]ust happened from working." In a section entitled, "[w]hat caused the accident," plaintiff wrote, "[o]ccupational hazard no specific accident just happens."
Plaintiff rejoined defendant's paving crew the next day, May 12, as a laborer, and also worked on May 13. When plaintiff reported to work on May 14, his employment was terminated, effective immediately. Plaintiff went to defendant's office, where he was given a "stack of papers," including a workers' compensation claim form. The form was completed and filed some time after plaintiff's employment ended. In the fall of 1998, on being informed that defendant had an open position on a paving crew, plaintiff reapplied to work for defendant but was not rehired.
On October 8, 1998, plaintiff filed a complaint against defendant alleging retaliatory discharge in violation of R.C. 4123.90 (Count I), wrongful discharge in violation of public policy as established by R.C.4123.90 (Count II), unlawful discrimination in violation of R.C. 4112.01
(Count III), promissory estoppel (Count IV), and breach of contract (Count V). On April 15, 1999, plaintiff filed an amended complaint presenting the same material allegations, but adding Miller in his individual capacity as a new party defendant in Count III. The trial court subsequently granted summary judgment to defendant and Miller on Count III, dismissing Miller from the action in his individual capacity. The trial court denied summary disposition to defendant on the remaining four claims of plaintiff's complaint.
On April 23, 1999, defendant filed a motion to disqualify plaintiff's counsel, asserting plaintiff's counsel had a conflict of interest because he formerly worked for the law firm which represented defendant in this action. Defendant asserted plaintiff's counsel, in his capacity with the law firm, had represented defendant in labor and employment issues and acquired defendant's confidences and information. Following an evidentiary hearing on the motion, the trial court issued a decision denying defendant's motion to disqualify plaintiff's counsel. A jury trial was held on the four remaining claims of plaintiff's complaint. Following the close of plaintiff's case-in-chief, the trial court granted a directed verdict in favor of defendant.
Plaintiff filed a motion for sanctions pursuant to R.C. 2323.51 and Civ.R. 11 to recover attorney fees and costs incurred in defending against defendant's April 23, 1999 motion to disqualify plaintiff's counsel. Concluding defendant's motion to disqualify plaintiff's counsel was not frivolous, made in bad faith, or brought as the result of willful misconduct, the trial court overruled plaintiff's motion for sanctions.
Plaintiff appeals, assigning the following errors:
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING APPELLEE AN EXTENSION OF TIME TO FILE ITS ANSWER TO APPELLANT'S FIRST AMENDED VERIFIED COMPLAINT BECAUSE APPELLEE FAILED TO MAKE A PROPER SHOWING OF EXCUSABLE NEGLECT.
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S MOTION TO STRIKE APPELLEE'S UNTIMELY ANSWER.
 III. APPELLEE FAILED TO TIMELY FILE ITS ANSWER TO APPELLANT'S FIRST AMENDED COMPLAINT AND THEREFORE THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION FOR DEFAULT JUDGMENT WAS AN ABUSE OF THE TRIAL COURT'S DISCRETION.
 IV. IN CONSTRUING THE EVIDENCE MOST STRONGLY IN FAVOR OF THE APPELLANT, THE TRIAL COURT ERRED AS A MATTER OF LAW IN RULING THAT REASONABLE MINDS COULD REACH ONLY ONE CONCLUSION, WARRANTING THE GRANTING OF A DIRECTED VERDICT IN FAVOR OF APPELLEE.
 V. THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT BY STRIKING AND THEN INSTRUCTING THE JURY TO DISREGARD THE TESTIMONY OF KARL E. HAECKER, D.O.
 VI. THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT BY RULING THAT APPELLANT'S TRIAL EXHIBITS NUMBERS 10, 11, 12, 13, 14, AND 15 BE ADMITTED ONLY IN REDACTED FORM.
 VII. THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING PLAINTIFF'S MOTION FOR SANCTIONS AND REQUEST FOR ATTORNEY'S FEES PURSUANT TO R.C. 2323.51 AND CIVIL RULE 11.
 VIII. THE TRIAL COURT ERRED AS A MATTER OF LAW BY REFUSING TO CONDUCT AN EVIDENTIARY HEARING ON APPELLANT'S MOTION FOR SANCTIONS AND REQUEST FOR ATTORNEY'S FEES PURSUANT TO R.C. 2323.51 AND CIVIL RULE 11.
Contingent on plaintiff being granted relief in his appeal, defendant cross-appeals, assigning as error the trial court's denial of summary judgment to defendant on plaintiff's claims of breach of contract, promissory estoppel, and retaliatory discharge in violation of statute and public policy, which states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING APPELLEE/CROSS-APPELLANT, MILLER PAVEMENT MAINTENANCE, INC.'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, IV AND V OF THE COMPLAINT WHEN APPELLANT/CROSS-APPELLEE WHOLLY FAILED TO SET FORTH EVIDENCE WITH RESPECT TO AT LEAST ONE (AND IN SOME CASES SEVERAL) ELEMENTS OF HIS CLAIMS FOR RELIEF.
Plaintiff's first three assignments of error are interrelated, and we address them jointly. Together they assert the trial court abused its discretion in (1) granting defendants an extension of time to file their answer to plaintiff's first amended complaint, and (2) denying plaintiff's motions to strike defendants' late answer and for a default judgment.
On October 8, 1998, plaintiff filed his original complaint against defendant and then on April 15, 1999, plaintiff filed an amended complaint adding Pete Miller, defendant's president, in his individual capacity as a party defendant in Count III of plaintiff's complaint. The material allegations in the amended complaint mirrored those of the original complaint. On April 23, 1999, defendant moved to disqualify plaintiff's counsel due to an alleged conflict of interest, and on April 28, 1999, both defendants moved to modify the trial date and for a stay of all discovery and motions practice until the court ruled on the pending motion to disqualify.
On June 10, 1999, defendants filed their answer to plaintiff's amended complaint, asserting the same defenses raised in defendants' answer filed on November 16, 1998, in response to plaintiff's original complaint. On June 24, 1998, plaintiff moved to strike defendants' answer to the amended complaint and moved for entry of a default judgment, basing both on defendants' failure to timely defend against the amended complaint.
Pursuant to Civ.R. 6(B), defendants moved on June 28, 1999, for an extension of time to file their answer to the amended complaint. Defendants asserted their failure to timely file their answer was the result of excusable neglect, explaining that due to preparation for their motion to disqualify plaintiff's counsel, they failed to note the time period for filing the answer and they mistakenly relied on an anticipated grant of their motion to stay. On July 7, 1999, for "good cause shown," the trial court granted defendants leave to file their answer to the amended complaint and deemed the answer filed instanter. The court subsequently overruled as moot plaintiff's motions to strike defendants' answer and for default judgment.
Plaintiff asserts that because defendants' proffered reasons do not constitute excusable neglect, the trial court abused its discretion in permitting defendants to file an answer to the amended complaint after the twenty-eight-day period had expired under Civ.R. 12(A)(1), in failing to strike the answer as untimely, and in failing to grant plaintiff's motion for a default judgment.
Civ.R. 6(B) states in pertinent part:
 When by these rules * * * an act is required * * * to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *.
Thus, if a defendant moves for leave to file an answer after the date the answer is due, the trial court may permit the filing of the untimely answer on a showing of excusable neglect. State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs. (1995), 72 Ohio St.3d 464, 465; Faith Electric Co. v. Kirk (May 10, 2001), Franklin App. No. 00AP-1186, unreported. A determination whether neglect is excusable must take into consideration all the surrounding facts and circumstances, and courts must be mindful of the admonition that cases should be decided on their merits, where possible, rather than on procedural grounds. Marion Production Credit Assn. v. Cochran (1988), 40 Ohio St.3d 265, 271; Fowler v. Coleman (Dec. 28, 1999), Franklin App. No. 99AP-319, unreported. This court will not disturb a trial court's determination under Civ.R. 6(B) absent a showing of an abuse of discretion. Faith Electric Co., Fowler, supra.
Defendants' untimely answer was filed before plaintiff moved for a default judgment. "When a party answers out of rule but before a default is entered, if the answer is good in form and substance, a default should not be entered." Fowler, supra, citing Miami Sys. Corp. v. Dry Cleaning Computer Sys., Inc. (1993), 90 Ohio App.3d 181, 186; Mendise v. Plain Dealer Publishing Co. (1990), 69 Ohio App.3d 721, 724; Suki v. Blume (1983), 9 Ohio App.3d 289 . See, also, Marion, supra, at 272 ("Until a motion for default is filed, it is presumed that the complaining party is not entitled to a default judgment, which fact serves to enlarge the discretion of the trial court to allow a delayed responsive pleading").
As in Fowler, plaintiff's original and amended complaints were substantially the same, differing in the addition of a defendant in his individual capacity. Plaintiff thus could not claim that he was surprised or misled by defendants' answer. Moreover, the absence of a timely answer to the amended complaint did not give an unfair strategic advantage to defendants, and plaintiff has identified no prejudice which he suffered by the late filing of defendants' answer to the amended complaint. See Fowler, supra, and Marion, supra, at 272. Further, the parties' ability to litigate the issues was not impeded to any degree by defendants' failure to timely answer plaintiff's amended complaint. To the contrary, both parties continued to vigorously litigate the issues in the trial court. Finally, given that cases should be decided on the merits whenever possible, we cannot say that the trial court abused its discretion in permitting defendants to file instanter their answer to the amended complaint.
Because defendants' answer was properly allowed to be filed instanter, plaintiff's second and third assignments of error regarding the trial court's denial of plaintiff's motions to strike and for default judgment, which were based on defendants' failure to timely answer, are rendered moot and we decline to address them. App.R. 12(A)(1)(c). See Fowler, supra. Accordingly, plaintiff's first assignment of error is overruled.
In his fourth assignment of error, plaintiff asserts the trial court erred, as a matter of law, in granting a directed verdict in favor of defendant on each of plaintiff's claims: breach of contract, promissory estoppel, retaliatory discharge in violation of R.C. 4123.90, and wrongful discharge based upon the public policy stated in R.C. 4123.90. We shall address each of plaintiff's claims in order, but we address together plaintiff's claims of breach of contract and promissory estoppel because they are interrelated.
A trial court may grant a motion for directed verdict when the court, construing the evidence in favor of the nonmoving party, finds that on any determinative issue, reasonable minds can come to but one conclusion on the evidence submitted and that conclusion is adverse to the nonmoving party. McConnell v. Hunt Sports Enterprises (1999), 132 Ohio App.3d 657,686. The court does not engage in a weighing of the evidence and does not evaluate the credibility of the witnesses. Id. Rather, the court solely determines whether sufficient material evidence was presented at trial to create a factual question for the jury. Id. This court is governed by the same standard as the trial court in determining whether a party is entitled to a directed verdict, and our review is de novo. Id. at 687.
Breach of Contract and Promissory Estoppel
The trial court granted a directed verdict to defendant on plaintiff's breach of contract claim because the court determined " * * * plaintiff has not established that there was a contract, expressed or implied, in which Mr. Sidenstricker and Miller Pavement and Maintenance had agreed that Mr. Sidenstricker's employment would be anything other than at-will contract arrangement." (Tr. III, 518.) The trial court granted a directed verdict against plaintiff's promissory estoppel claim "because plaintiff has not shown that there was promise of future employment made to Mr. Sidenstricker by Miller Pavement and Maintenance or any of its agents." (Id.)
Plaintiff asserts he established a breach of contract or promissory estoppel claim because evidence was presented at trial that (1) defendant induced plaintiff to forego a significant employment opportunity with Decker Construction in reliance on defendant's promise to employ plaintiff as a screed operator for the entire 1998 construction season, and (2) plaintiff reasonably relied on the promise to his detriment by rejecting Decker Construction's job offer and accepting defendant's offer of employment. Because plaintiff's arguments are directed to a claim of promissory estoppel, our discussion here will be similarly focused.
A strong presumption exists that an oral agreement of employment with no fixed duration is terminable at will by either party for any reason which is not contrary to law. Henkel v. Educ. Research Counsel of America (1976), 45 Ohio St.2d 249; Mers v. Dispatch Printing Co. (1985),19 Ohio St.3d 100. An exception to the general rule of employment-at-will can arise through the doctrine of promissory estoppel. Mers, supra, 104-105. Promissory estoppel limits an employer's right to discharge an employee when the employer makes a promise on which the employee relies to his or her detriment. Id. To establish a claim for promissory estoppel, a plaintiff must demonstrate a promise, clear and unambiguous in its terms, made by the employer, which the employer should reasonably and foreseeably expect to induce reliance by the employee; the employee must have actually relied on the promise and suffered injury as a result. Id. at 105; Montell v. Huntington Bancshares, Inc. (Aug. 14, 1997), Franklin App. No. 96APE12-1725, unreported.
The evidence plaintiff presented to establish the existence of a contract or promissory estoppel was primarily his own testimony. According to plaintiff's testimony, he was notified of defendant's orientation or pre-hiring meeting held on March 27, 1998; he attended the meeting; he was not offered a job at the meeting; on or around March 30 or 31, 1998, defendant's foreman, Russell Berry, telephoned plaintiff regarding plaintiff returning to work for defendant; plaintiff had a pending job offer from Decker Construction for 1998 he was considering; plaintiff and Berry discussed plaintiff's offer from Decker Construction; plaintiff thereafter went to work for defendant instead of Decker Construction; and plaintiff wanted to be the screed operator for the entire construction season. Berry testified he did not recall contacting plaintiff and offering him employment in 1998, he did not know how plaintiff was hired in 1998, he did not recall guaranteeing anyone an entire season's work, and he never made such a guarantee.
Construed most strongly in favor of plaintiff, the evidence fails to establish that defendant, or an agent acting on its behalf, made a clear, unambiguous promise to plaintiff to hire him for the entire 1998 construction season or that the terms of employment were anything other than at will. The trial court did not err in granting defendant a directed verdict on plaintiff's claims of breach of contract and promissory estoppel. Mers, supra.
Retaliatory Discharge in Violation of R.C. 4123.90
R.C. 4123.90, under which plaintiff brought his statutory claim for retaliatory discharge, provides in relevant part:
 No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.
The trial court granted defendant a directed verdict on plaintiff's retaliatory discharge claim under R.C. 4123.90 because the trial court determined plaintiff failed to establish a prima facie case as set forth in Wilson v. Riverside Hospital (1985), 18 Ohio St.3d 8. According to the syllabus of Wilson, a complaint filed by an employee against an employer states a claim for relief or retaliatory discharge when it alleges that the employee was injured on the job, filed a claim for workers' compensation, and was discharged by that employer in contravention of R.C. 4123.90. Relying on Wilson and Kilbarger v. Anchor Hocking Glass Co. (1997), 120 Ohio App.3d 322, the trial court concluded (1) plaintiff was required to establish each of the elements of retaliatory discharge articulated in Wilson, and (2) plaintiff failed to prove the first and third elements.
Regarding the first element, the trial court found plaintiff did not show he was injured on the job. Applying BP America v. Spring (May 31, 1989), Ashland App. No. CA-916, unreported, a case that also involved a inguinal hernia, the trial court held the "causal relationship between the accident and the injury (hernia) requires expert medical testimony, inasmuch as its etiology involves a question of scientific inquiry not within the knowledge of lay witnesses or a jury." Moreover, plaintiff has not provided any expert testimony that his hernia was caused by his work at Miller Pavement and Maintenance.
As to the third element, the trial court found plaintiff did not show he was discharged in contravention of the statute because plaintiff did not file a workers' compensation claim, nor did he institute, pursue, or testify in any proceedings under the workers' compensation act, before he was discharged. Applying Roseborough v. N.L. Industries (1984),10 Ohio St.3d 142, and Bryant v. Dayton Casket Co. (1982),69 Ohio St.2d 367, the trial court concluded that plaintiff, as an employee of a state-fund insured employer, had to file his workers' compensation claim before he was discharged to enjoy the protections of the act, while an employee of a self-insured employer could trigger the protections of the act without actually filing a workers' compensation claim.
Kilbarger, on which the trial court relied in concluding an R.C. 4123.90
plaintiff must prove injury on the job, involved a plaintiff employee who filed a workers' compensation claim for an alleged injury to his shoulder and upper arm. The defendant employer contested the claim, and a jury ultimately determined the injury was not job-related. When the employer subsequently discharged the plaintiff for falsification of records in connection with his workers' compensation claim, the plaintiff filed a retaliatory discharge claim against the employer, alleging the employer had terminated him in violation of R.C. 4123.90. Following a bench trial, judgment was entered in favor of the employer on the plaintiff's claim.
On appeal, the majority in Kilbarger determined, in accordance with the elements set forth in Wilson, that a plaintiff bringing a claim for retaliatory discharge under R.C. 4123.90 is required to allege and prove as part of his claim that he was injured on the job. Kilbarger, supra, at 338-339.
The court in Wilson, however, did not hold that proof of injury on the job is a necessary element of a retaliatory discharge claim in a workers' compensation case. In Wilson, the parties apparently did not dispute that the plaintiff was injured in a fall at her place of employment: the plaintiff in Wilson applied for and was awarded workers' compensation benefits, and her doctor did not release her to return to work until more than eleven months after her injury. When the plaintiff notified the employer of her intention to return to work, the employer informed her the employment relationship had been terminated because her leave exceeded the ten-week period permitted under the employer's leave of absence policy. The plaintiff then filed a complaint seeking damages for an alleged violation of R.C. 4123.90. Attached to the complaint was a letter from the employer informing the plaintiff she was not allowed to return to her job because of its leave of absence policy.
The employer moved to dismiss the complaint pursuant to Civ.R. 12(B)(6), arguing the complaint did not specifically allege that the plaintiff's discharge was in retaliation for plaintiff's workers' compensation claim. The Ohio Supreme Court disagreed, concluding that the material allegations in the complaint and the reference to R.C. 4123.90
in the complaint "sufficiently complied with the notice pleading requirements of Civ.R. 8(A)" to "manifest an adequate claim of a discharge in violation of R.C. 4123.90." Wilson, supra, at 10. The Supreme Court accordingly held that "[a] complaint filed by an employee against an employer states a claim for relief for retaliatory discharge when it alleges that the employee was injured on the job, filed a claim for workers' compensation, and was discharged by that employer in contravention of R.C. 4123.90." Id. Notably, the court did not hold that an employee must include those allegations to state a retaliatory discharge claim under R.C. 4123.90, but only that such allegations are sufficient to give a defendant notice of a claim for retaliatory discharge under R.C. 4123.90.
We recognize that the three elements set forth in Wilson, including injury on the job, have been cited with frequency by courts of this state regarding the elements of a retaliatory discharge claim under R.C. 4123.90. See, e.g., Kilbarger, supra; Wilson v. Semco, Inc. (2000),140 Ohio App.3d 488, 492; Markham v. Earle M. Jorgensen Co. (2000),138 Ohio App.3d 484, 492; Risch v. Friendly's Ice Cream Corp. (1999),136 Ohio App.3d 109, 112; Boyd v. Winton Hills Med. Health Ctr., Inc. (1999), 133 Ohio App.3d 150, 161. Except for Kilbarger, none of the decisions have squarely addressed whether "injury on the job" must be alleged and proved for a plaintiff to prevail in a retaliatory discharge case under R.C. 4123.90. Therefore, the decisions do not offer persuasive authority on the issue before us.
To determine whether "injury on the job" is a required element of a claim for retaliatory discharge under the statute, we are guided by the purpose of the Workers' Compensation Act generally, the purpose of R.C.4123.90 specifically, and an examination of retaliatory discharge causes of action.
The basic purpose of workers' compensation is to protect and provide a remedy for employees injured in the course of their employment. Section35, Article II, Ohio Constitution; Bailey v. Republic Engineered Steels, Inc. (2001), 91 Ohio St.3d 38, 40-41; Village v. Gen. Motors Corp., G.M.A.D. (1984), 15 Ohio St.3d 129, 133; Guy v. Arthur H. Thomas Co. (1978), 55 Ohio St.2d 183, 186. To accomplish that purpose, the workers' compensation legislation balances the rights and duties of employers and employees by striking a bargain between them.
As part of the "balance," employer participation in the workers' compensation system is generally compulsory, and participating employers must comply with the provisions of the Workers' Compensation Act. R.C.4123.01(B)(2). One provision of the Act, R.C. 4123.90, statutorily embodies a clear public policy that employers not retaliate against employees who exercise their statutory right to file a workers' compensation claim or pursue workers' compensation benefits. Bryant, supra, at 371, 374; Boyd, supra, at 161; Vince v. Parma Comm. Gen. Hosp. (Jan. 21, 1988), Cuyahoga App. No. 53180, unreported ("The laudable objective of this provision is that employees may not be intimidated from recovering for their injuries by the fear of reprisals by their employer, up to and including discharge from employment"). If an employer does retaliate against an employee by discharging the employee for filing or pursuing a workers' compensation claim, R.C. 4123.90 provides a basis for the employee to bring an action for retaliatory discharge.
The scope of the statute is nevertheless narrow, and R.C. 4123.90 does not prevent an employer from discharging an employee who is unable to perform his or her duties. Employees who have filed for workers' compensation benefits may be discharged for just and lawful reasons. The statute protects only against termination in direct response to the filing or pursuit of a workers' compensation claim. Markham, supra, at 493; Russell v. Franklin Cty. Auditor (Sept. 28, 1999), Franklin App. No. 98AP-1502, unreported, citing Barker v. Dayton Walther Corp. (1989),56 Ohio App.3d 1, 3. As observed by the Nevada Supreme Court, the concern here is whether an employee's exercise of his statutory right to pursue workers' compensation benefits will be "chilled" by a fear of reprisal or retribution for asserting that right:
 We know of no more effective way to nullify the basic purposes of Nevada's workmen's compensation system than to force employees to choose between a continuation of employment or the submission of an industrial claim. In the absence of an injury resulting in permanent total disability, most employees would be constrained to forego their entitlement to industrial compensation in favor of the economics necessity of retaining their jobs. Hansen v. Harrah's (1984), 100 Nev. 60, 64, 675 P.2d 394.
In retaliatory discharge claims generally, the issue is whether the employer discharged an employee for exercising a right protected by statute or public policy. See Greeley v. Miami Valley Maintenance Contractors, Inc. (1990), 49 Ohio St.3d 228, 233-234; Mers, supra, at 103, fn. 2. For retaliatory discharge in workers' compensation cases, the issue is whether an employee was discharged or demoted in retaliation for exercising his right under statute to pursue workers' compensation benefits. See Lingle v. Norge Div. of Magic Chef, Inc. (1988),486 U.S. 399, 407; Markham, supra, at 492. See, generally, Anderson v. Lorain Cty. Title Co. (1993), 88 Ohio App.3d 367, 372; Reichenbach v. TTW-NIFCO, Inc. (Sept. 21, 2000), Franklin App. No. 00AP-42, unreported; Russell v. Franklin Cty. Auditor (Sept. 28, 1999), Franklin App. No. 98AP-1502, unreported.
In examining the requirements for establishing a retaliatory discharge claim in other contexts, the courts of this state have held a plaintiff must first establish a prima facie case by showing (1) he or she engaged in an activity protected by statute or public policy, (2) he or she was subject to some adverse employment action, and (3) a causal link existed between the protected activity and the adverse action. Brentlinger v. Highlights for Children (2001), 142 Ohio App.3d 25, 36 (involving discharge of employee after employee complained of sexual harassment); Chandler v. Empire Chem., Inc. (1994), 99 Ohio App.3d 396, 402
(involving discharge in retaliation for making inquiry to Civil Rights Commission about wage discrimination); Neal v. Hamilton Cty. (1993),87 Ohio App.3d 670, 677-678, 681 (involving retaliatory discharge for filing discrimination and workers' compensation claims).
If the plaintiff establishes his or her prima facie case, then the burden of production shifts to the employer to articulate a legitimate, nonretaliatory reason for its action. If the employer succeeds in doing so, the burden shifts back to the employee to show that the employer's proffered reason is a mere pretext. Brentlinger, supra; Markham, supra, at 492; Neal, supra, at 678. See, also, Jackson v. RKO Bottlers of Toledo, Inc. (C.A.6, 1984), 743 F.2d 370, 374-375, and cases cited therein.
Other jurisdictions have recognized and applied the above elements in the context of workers' compensation cases without an additional element of "injury on the job" for retaliatory discharge claims. See Lingle, supra, at 407 (noting that to show retaliatory discharge in a workers' compensation case, the employee must show (1) he was discharged or threatened with discharge, and (2) the employer's motive in discharging the employee was to deter him from exercising his rights under the Workers' Compensation Act or to interfere with his exercise of those rights). Moreover, various courts have determined the viability of an employee's right to pursue workers' compensation benefits without fear of reprisal from the employer, regardless of the ultimate outcome of the workers' compensation claim itself. In Ohio, at least one court has allowed an employee to proceed with her claims of retaliatory discharge based on R.C. 4123.90 and public policy, even though the employee's workers' compensation claim was ultimately denied. See Kent v. Chester Labs, Inc. (June 29, 2001), Hamilton App. No. C-000569, unreported.
R.C. 4123.90 states that an employer shall not retaliate against an employee because the employee "filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer." (Emphasis added.) One interpretation of the statutory language at issue, advanced by defendant, suggests that an employee who has filed a workers' compensation claim or pursued workers' compensation benefits can maintain an action for retaliatory discharge only if he also proves that his claimed injury occurred in the course of and arose out of his employment: that it was a legally compensable injury under the act. However, an equally reasonable interpretation of the statute suggests that the statutory language at issue merely modifies "claim" and "proceeding," clarifying that it is an employee's right to file or pursue a workers' compensation claim that is protected under the act, as opposed to a right to file other types of claims or participate in other types of proceedings.
"[W]here a section of the Workmen's Compensation Act will bear two reasonable but opposing interpretations, the one favoring the claimant must be adopted." State ex rel. Sayre v. Indus. Comm. (1969),17 Ohio St.2d 57, 62; Swallow v. Indus. Comm. (1988), 36 Ohio St.3d 55,56. Construing R.C. 4123.90 in accord with its purpose of protecting the right of employees to assert claims for workers' compensation benefits without fear of reprisal or retaliation, and consistent with established law regarding retaliatory discharge claims, we conclude that an employee need not allege and prove that the employee had a legally compensable injury under the Act before the employee can prevail on a claim for retaliatory discharge under R.C. 4123.90. Rather, to prevail on a claim of retaliatory discharge under R.C. 4123.90, an employee must show: (1) the employee filed a workers' compensation claim or instituted, pursued or testified in a workers' compensation proceeding regarding a workers' compensation claim (the "protected activity"), (2) the employer discharged, demoted, reassigned or took punitive action against the employee (an "adverse employment action"), and (3) a causal link existed between the employee's filing or pursuit of a workers' compensation claim and the adverse employment action by the employer ("retaliatory motive"). Consistent with Wilson and the terms of R.C. 4123.90, the employee may, but need not, also allege and prove the employee was injured on the job. Because plaintiff need not prove he was injured on the job to sustain his retaliatory discharge claim, plaintiff also need not present expert medical testimony at trial on his retaliatory discharge claim to establish that his hernia was caused by his work with defendant.
Plaintiff next asserts the trial court erred in determining that because plaintiff was fired by defendant, a state-fund insured employer, before he filed his claim for workers' compensation benefits, plaintiff could not maintain his retaliatory discharge claim under R.C. 4123.90. While plaintiff undisputedly was discharged before he filed his claim for workers' compensation, plaintiff presented evidence that on at least two occasions prior to his discharge he asked defendant for the paperwork needed to file a workers' compensation claim. Defendant failed to give plaintiff the requisite claim forms; instead defendant gave plaintiff an accident report form to fill out, which plaintiff apparently believed started the workers' compensation claim process.
Under R.C. 4123.90, "an employee must have either filed a claim or initiated or pursued proceedings for workers' compensation benefits prior to being discharged for his employer to be liable under the statute." Bryant, supra, at syllabus. (Emphasis added.) Subsequently, in Roseborough, supra, at 143, the Supreme Court explained it "did not hold in Bryant that the protection of R.C. 4123.90 is triggered only upon the actual filing of a written claim." The court concluded the legislative intent reflected in R.C. 4123.90 would be frustrated if an actual claim had to be filed before the employee is protected by the statute. Id. The court, however, did not expressly determine in Roseborough "what constitutes the `institution' or `pursuance' of a claim when the employer is a state fund insured employer." Id. at 144, fn. 2.
Applying the foregoing reasoning, the court held in Thompson v. Kinro, Inc. (1987), 37 Ohio App.3d 175, 179, an employer is estopped to claim that an employee did not "file" her workers' compensation claim prior to being fired when the employer or its agent led the employee to believe that it would file the claim for her. Similarly, in Enyart v. Columbus Metro. Area Community Action Org. (1996), 115 Ohio App.3d 118, 123-125, this court rejected the defendant's contention that one must file a workers' compensation claim before being fired in order to bring an action for wrongful discharge pursuant to R.C. 4123.90, determining instead that an employee is merely required to initiate, pursue, or file the claim prior to being discharged from employment. Id. at 125, citing Bryant, supra. Enyart held that an employee has "initiated" or "pursued" his claim prior to discharge, and thus falls within the protection of R.C. 4123.90, when the employee has completed portions of the claim forms prior to his discharge, even though the forms were not completed by the employer and filed until after the date of discharge. Id.
The legislative intent of R.C. 4123.90 would be frustrated under these circumstances if plaintiff's action for retaliatory discharge was precluded because plaintiff did not file his workers' compensation claim before defendant fired him. Plaintiff repeatedly asked for the proper paperwork to file his workers' compensation claim, but defendant waited until after plaintiff had been discharged before giving plaintiff the proper claim forms. In light of the fact that R.C. 4123.90 should be liberally construed in favor of the employee, defendant is estopped from asserting that plaintiff has not "pursued" workers' compensation benefits.
Accordingly, the trial court improperly granted defendant a directed verdict on plaintiff's claim of retaliatory discharge under R.C. 4123.90.
Wrongful Discharge Based on Public Policy
Plaintiff's tortious wrongful discharge claim expressly was based on the public policy embodied in R.C. 4123.90. See Boyd v. Winton Hills Medical and Health Center, Inc. (1999), 133 Ohio App.3d 150, 161-162. The trial court correctly determined under Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, certiorari denied, 522 U.S. 1008, that an at-will employee may bring an action for wrongful discharge based upon the public policy embodied in a particular statute, but that the employee must comply with the requirements set forth in the statute which embodies the particular public policy. Based on its determination that plaintiff did not comply with the requirements of R.C. 4123.90, the trial court directed a verdict for defendant on plaintiff's public policy claim.
In our analysis of plaintiff's retaliatory discharge claim based on a violation of R.C. 4123.90, we concluded plaintiff presented sufficient evidence of compliance with the statutory requirements of that section to survive defendant's directed verdict motion. Because the trial court's directed verdict for defendant on plaintiff's public policy claim is based on the trial court's erroneous conclusion that plaintiff did not comply with the requirements of R.C. 4123.90, the trial court erred in granting a directed verdict on plaintiff's public policy claim. Accordingly, plaintiff's fourth assignment of error is sustained as to his claims for retaliatory discharge under R.C. 4123.90 and for tortious wrongful discharge based on public policy, but overruled as to his claims for breach of contract and promissory estoppel.
In his fifth assignment of error, plaintiff asserts the trial court abused its discretion, prejudiced plaintiff's case, and affected plaintiff's substantial rights by striking the testimony of Dr. Karl Haecker, plaintiff's treating physician, and then instructing the jury to disregard Dr. Haecker's testimony. Plaintiff's sixth assignment of error asserts the trial court erred in redacting various exhibits. Because plaintiff's fifth and sixth assignments of error are rendered moot by our disposition of his fourth assignment of error, we decline to address them. App.R. 12(A)(1)(c).
Plaintiff's seventh and eighth assignments of error are interrelated and will be discussed together. They involve the trial court's denial of plaintiff's motion for sanctions pursuant to R.C. 2323.51 and Civ.R. 11 arising out of defendant's motion to disqualify plaintiff's counsel.
In determining whether sanctions are appropriately awarded under R.C.2323.51, a court must determine "(1) whether an action taken by the party to be sanctioned constitutes `frivolous conduct,' and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." Ceol v. Zion Indus., Inc. (1992),81 Ohio App.3d 286, 291. "Frivolous conduct" as used in the statute means conduct by a party to a civil action that (1) "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including * * * unnecessary delay or a needless increase in the cost of litigation," or (2) "is not warranted under existing law" or cannot be supported by a good faith argument for an extension, modification or reversal of existing law or the establishment of new law. R.C. 2323.51(A)(i), (ii). Whether a party's conduct "serves merely to harass or maliciously injure another party" involves a factual determination; whether the conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension of existing law requires a legal analysis. Soler v. Evans, St. Clair Kelsey (Sept. 26, 2000), Franklin App No. 99AP-1020, unreported, certiorari granted on other grounds (2001), 91 Ohio St.3d 1418, citing Lable Co. v. Flowers (1995), 104 Ohio App.3d 227, 233. See, also, Crooks v. Consolidated Stores Corp. (Feb. 4, 1999), Franklin App. No. 98AP-83, unreported.
A trial court may award sanctions pursuant to Civ.R. 11 if the court finds an attorney signed a motion either knowingly or deliberately failing to discover that good grounds did not support the motion, or the motion was brought for the purpose of delay. Kemp, Schaeffer Row Co., L.P.A. v. Frecker (1990), 70 Ohio App.3d 493, 497.
Our review of the trial court's decision entails mixed questions of fact and law: we accord some deference to the trial court's factual determinations and we conduct a de novo review of its legal determinations. Soler, citing Wiltberger v. Davis (1996),110 Ohio App.3d 46, 51-52. Where a trial court has found conduct to be frivolous, the trial court's decision whether to award sanctions is reviewed for an abuse of discretion. Id. See, also, Sheets v. Carmel Farms, Inc. (June 5, 1997), Franklin App. No. 96APE09-1224, unreported. Here, the trial court overruled plaintiff's motion for sanctions, finding that defendant's motion to disqualify plaintiff's counsel "was not frivolous, made in bad faith, or willful misconduct."
Plaintiff asserts defendant's motion to disqualify was clearly frivolous pursuant to R.C. 2323.51. Plaintiff argues that the facts, as determined by the trial court in its decision overruling defendant's motion to disqualify, fully support plaintiff's assertion that defendant's motion to disqualify was brought merely to harass or maliciously injure plaintiff, and was not warranted under existing law. Plaintiff submits that, while we should defer to the trial court's factual determinations, this court should find the trial court failed in its legal analysis and abused its discretion in failing to find defendant's motion to disqualify plaintiff's counsel was frivolous and sanctionable under R.C. 2323.51 and in violation of Civ.R. 11.
According to the trial court's findings in its decision overruling defendant's motion to disqualify plaintiff's counsel, plaintiff's counsel joined the firm of Buckingham, Doolittle Burroughs as a shareholder in 1992 where he practiced in the labor and employment area until he left the firm in February 1997. Defendant was a client of the firm during plaintiff's counsel's employment there, but defendant worked almost exclusively with a senior partner of the firm. A timesheet showed plaintiff's counsel performed 5.7 hours of legal work for defendant during his five years employment with the firm. Plaintiff's counsel's representation included conferences with Pete Miller concerning recurring employee problems, terminated employees' requests for unemployment benefits, wage and hour matters, and defendant's substance abuse policy.
The trial court concluded that to disqualify plaintiff's counsel, defendant had to satisfy the three-part test set forth in Dana Corp. v. Blue Cross Blue Shield Mut. of N. Ohio (C.A.6, 1990), 900 F.2d 882. The trial court determined defendant satisfied the first and third prongs, but failed to carry its burden of showing that the subject matter of the prior attorney-client relationship was substantially related to the current action. In making its finding, the court concluded the representation by plaintiff's counsel in the current action revolved around the wrongful dismissal of an employee after seeking workers' compensation benefits, but because counsel's prior representation of defendant was unrelated to his current representation of plaintiff, the "shared confidences" derived in the prior representation were not substantially related to the current action. Thus, the trial court determined defendant did not demonstrate it would be unfairly prejudiced by counsel's representation of plaintiff in this case, but plaintiff's right to choose his counsel would be prejudiced if the motion to disqualify was granted.
Defendant's motion had arguable factual and legal merit. Defendant satisfied the first and third prongs of the test set forth in Dana Corp., and competent evidence supported the second prong of the test. Specifically, defendant presented evidence that while plaintiff's counsel was employed with Buckingham, Doolittle Burroughs, he worked with defendant, and with Pete Miller in particular, on matters concerning defendant's employment policy manual, procedures regarding employee termination, workers' compensation issues, unemployment compensation issues, and wage and hour matters.
According deference to the factual finding of the trial court, we conclude the trial court did not err in finding defendant's motion to disqualify plaintiff's counsel was not frivolous. The factual and legal basis defendant presented on the second prong of the test had arguable merit. Compare Rossman Co. v. Donaldson (Dec. 6, 1994), Franklin App. No. 94APE03-388, unreported (upholding an award of sanctions where action was "based upon suspicions which were generally not supported at all and/or contrary to documentary and other evidence"). Defendant's failure to prevail on the motion did not necessarily equate to a finding that the motion was "frivolous." See Sheets, supra. Defendant's motion was not the "egregious conduct" to which R.C. 2323.51 is directed. See Stephens v. Crestview Cadillac, Inc. (1989), 64 Ohio App.3d 129, 134.
Although defendant's motion to disqualify was filed more than six months after plaintiff filed his initial complaint, it was filed before any depositions were held and well before trial in this matter. The timing apparently was due in large part to defendant's investigation and evaluation of the legal and factual merit of the motion. The trial court accordingly did not abuse its discretion in refusing to award sanctions, including costs and attorney fees, under R.C. 2323.51 or Civ.R. 11.
Plaintiff further asserts that the trial court erred as a matter of law by refusing to conduct an evidentiary hearing on plaintiff's motion for sanctions and request for attorney fees. Plaintiff did not request a hearing on his motion. Defendant, on the other hand, requested a hearing prior to the issuance of sanctions in the event the trial court considered an award of sanctions in this case.
R.C. 2323.51 does not require a trial court to hold a hearing before denying a motion for an award of sanctions based on that statutory provision. Justice v. Lutheran Soc. Serv. of Central Ohio (1992),79 Ohio App.3d 439, 444. See R.C. 2323.51(B)(2). The court must conduct a hearing only on those motions which demonstrate arguable merit. Id.; Woodworth v. Huntington Natl. Bank (Dec. 7, 1995), Franklin App. No. 95APE02-219, unreported. Where the trial court determines that no basis exists for the imposition of sanctions, it may deny the motion without a hearing. Justice, supra. Here, the trial court appropriately determined plaintiff presented no basis for imposing sanctions. Accordingly, it did not err in denying plaintiff's motion without holding a hearing. Id. Plaintiff's seventh and eighth assignments of error are overruled.
Defendant cross-appeals, contending the trial court erred in denying defendant's summary judgment motion on plaintiff's claims of retaliatory discharge under R.C. 4123.90, tortious wrongful discharge based on the public policy embodied in R.C. 4123.90, breach of contract, and promissory estoppel. The trial court determined genuine issues of material fact existed for each of the claims, and accordingly denied summary judgment to defendant on the claims.
Summary judgment shall not be rendered unless the moving party demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, with the non- moving party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C); Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Assn., Inc. (2001),141 Ohio App.3d 269, 275. Appellate review of summary judgment motions is de novo. Id. Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.
Regarding plaintiff's claim of retaliatory discharge under R.C. 4123.90, defendant asserts plaintiff failed to offer the requisite proof to establish a prima facie case of retaliatory discharge, in that plaintiff failed to submit evidence that he was "injured on the job," he filed or pursued a workers' compensation claim prior to his employment being terminated, and defendant fired plaintiff for pursing workers' compensation benefits. Defendant contends that, even if plaintiff did present sufficient facts to establish a prima facie case of retaliatory discharge, defendant set forth legitimate, nonretaliatory and unrefuted reasons for discharging plaintiff. Defendant further asserts that because plaintiff did not establish his retaliatory discharge claim under the statute, defendant was entitled to summary judgment on plaintiff's public policy wrongful discharge claim.
The trial court did not err in finding genuine issues of material fact existed to preclude summary judgment for defendant on plaintiff's claim of retaliatory discharge under R.C. 4123.90, and for wrongful discharge based on the public policy embodied in the statute. Even assuming arguendo that plaintiff had to present evidence on each of the elements articulated in Wilson, plaintiff presented some evidence by affidavit that he was injured on the job, he actively pursued the filing of a workers' compensation claim before he was fired, and defendant had a retaliatory motive in discharging plaintiff.
Because we have overruled plaintiff's assignments of error on his claims of breach of contract and promissory estoppel, we decline to address as moot defendant's assertions of error regarding the trial court's failure to grant summary judgment to defendant on those claims. Accordingly, defendant's assignment of error is overruled.
Having overruled plaintiff's first, seventh, eighth, and part of plaintiff's fourth assignment of error, and defendant's assignment of error on cross-appeal, but having sustained plaintiff's fourth assignment of error to the extent indicated, and rendering moot plaintiff's second, third, fifth, and sixth assignments of error, we affirm in part and reverse in part the judgment of the trial court and remand for further proceedings consistent with this opinion.
TYACK and LAZARUS, JJ., concur.